FLORIDA WILDLIFE FEDERATION, a Nonprofit Florida Corporation, et al., Plaintiffs-Appellants,

v.

Neil Edward GOLDSCHMIDT, Secretary, U. S. Dept. of Transportation, et al., Defendants-Appellees.

No. 77–3349.

United States Court of Appeals, Fifth Circuit.

Feb. 7, 1980.

F. Wallace Pope, Jr., Clearwater, Fla., for plaintiffs-appellants.

Nancy Firestone, James W. Moorman, Asst. Attys. Gen., Dirk Snel, Dept. of Justice, Washington, D. C., for Goldschmidt.

James W. Anderson, Alan E. DeSerio, H. Reynolds Sampson, Gen. Counsel, Dept. of Transp., Tallahassee, Fla., for State of Fla. Dept. of Transp.

J. Patrick McElroy, Larry D. Brown, Asst. City Attys., St. Petersburg, Fla., for St. Petersburg Area Chamber of Commerce.

Before THORNBERRY, GODBOLD and TATE, Circuit Judges.

PER CURIAM:

Plaintiffs, Florida Wildlife Federation and others, brought this action for declaratory relief, mandamus, and injunctive relief against the Secretary of Transportation on March 10, 1976. The plaintiffs-appellants seek to enjoin further funding and construction of the remaining portion of Interstate–275 through St. Petersburg, Florida. As will soon become apparent, this case involves more facts than law.

The claim for relief is based on the allegation that the Department of Transportation [1] proceeded in violation of the National Environmental Policy Act of 1969, 42 U.S.C. Section 4321 *et seq.* ("NEPA") by failing to prepare an environmental impact statement

---

1. During the course of the proceedings the following parties were permitted to intervene as party defendants in support of completing I–275: the State of Florida Department of Transportation; the City of St. Petersburg, Florida; St. Petersburg branch-NAACP; St. Petersburg Area Chamber of Commerce; and the Pinellas Suncoast Chamber of Commerce.

for the then remaining unconstructed portion of I–275. Alternatively, the appellants contend that the highway project was improperly segmented for environmental study.

The district court denied plaintiffs' motion for a permanent injunction and other relief on September 26, 1977. We conclude that this case has become moot while on appeal, because of substantial completion of the only portion of the highway construction sought to be enjoined for which no environmental impact statement was prepared. *Friends of Earth v. Bergland*, 576 F.2d 1377 (9th Cir. 1978).

I–275 is an urban highway loop which is routed through the City of St. Petersburg. It is part of the federal-aid highway system and is a branch of Interstate–75 which runs along the west coast of Florida.

I–275 begins at a junction with I–75 just outside of Tampa, Florida. It then crosses Tampa Bay over the Howard Frankland Bridge and runs into St. Petersburg. I–275 traverses St. Petersburg from north to south where it connects with the Sunshine Skyway. It then crosses Tampa Bay again and rejoins I–75 near Rubonia, Florida.

On January 1, 1970, after most of the planning of the highway had already taken place and much of I–275 was under construction, NEPA took effect. As part of the Act, the Council on Environmental Quality was established and vested with the authority to promulgate guidelines to implement the Act.

Pursuant to the mandates of NEPA and consistent with the Council on Environmental Guidelines, the Federal Highway Administration issued a Policy and Procedure Memorandum providing that an environmental impact statement should be prepared for highway segments that received design approval on or after January 1, 1970 and before February 1, 1971, if in the judgment of the Federal Highway Administration implementation of NEPA required preparation of an environmental impact statement.

In accordance with this Policy and Procedure Memorandum, in November 1971, the Federal Highway Administration and the Florida Department of Transportation prepared a review and reassessment of that portion of I–275 between 18th Avenue South and 39th Avenue South, which had received design approval prior to February 1, 1971. Following review and reassessment, the Federal Highway Administration concluded that I–275 had reached a stage of development where the costs of delay while an environmental impact statement was being prepared would be greater than the benefits to be derived. Accordingly, the Federal Highway Administration decided that planning and construction of I–275 should continue.

However, in June 1973 the National Wildlife Federation challenged in federal district court in the District of Columbia the validity of the Federal Highway Administration environmental reassessment regulations contained in this Policy. *National Wildlife Federation v. Tiemann*, Civ.No. 1318–73 (D.C., D.C.1973).

That case was settled and a consent judgment was entered on July 23, 1973. In general, the consent judgment called for the Federal Highway Administration to reassess the ongoing projects for which an environmental impact statement had not been prepared.[2]

In accordance with the consent judgment, the division engineer selected that portion of I–275 between 22nd Avenue North and 39th Avenue South, a distance of approximately 5 miles, for the consent judgment reassessment. The division engineer concluded that an environmental impact statement was not required because the highway had progressed to the point where the cost of delaying construction outweighed the benefits to be derived from preparing an environmental impact statement.

Although the division engineer had determined that an environmental impact state-

---

**2.** In light of mootness, we pretermit the issue whether the consent judgment entered in *National Wildlife Federation v. Tremann, supra*

(R. 18, Exhibit B) precludes this suit challenging the propriety of the reassessment under NEPA.

ment was not required, the local Federal Highway Administration office believed that some formal environmental document was needed.

On June 17, 1974, the division engineer approved a 231 page Negative Declaration that included a discussion of positive and adverse social and economic impacts, as well as physical environmental consequences.

In addition to these extensive environmental assessments (i. e. the two environmental reassessments and a negative declaration for the portion of I–275 north of 39th Avenue South), the Department also prepared an environmental impact statement for the segment of I–275 between 39th Avenue South and the Sunshine Skyway and another environmental impact statement for the Sunshine Skyway itself. Neither of these two environmental impact statements has been challenged.

Since the institution of these appellate proceedings, further significant construction has been completed. Additionally, a substantial amount of property has been acquired along the route selected for the I–275 construction. The extent of this current construction and land acquisition is outlined in the affidavit executed by the Interstate Highway Projects Manager for the Florida Department of Transportation and graphically demonstrated in a color coded map. (Both exhibits have been filed by the appellees, without objection.)

Where the activities sought to be enjoined have already substantially occurred and the appellate court can not undo what has already been done, the action is moot. This is especially so where, as here, no stay on appeal has been sought. *Friends of Earth, Inc. v. Bergland, supra.*

Even for those limited portions of the highway that are not yet completed and/or the land totally acquired, environmental im-

pact statements or a functional equivalent [3] have been prepared. The highway is nearly finished, and the vast majority of families have already been relocated and businesses reestablished. The evidence demonstrates that environmental consequences were not neglected by the Department in its decision-making.

An environmental impact statement must be prepared for "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. Section 4332(2)(C). The environmental impact statement serves as a basis by which the agency can fully and completely evaluate the environmental consequences of the project. The environmental impact statement aspires to guarantee that the most intelligent, optimally beneficial environmental decision will ultimately be made. It also provides an accessible means by which those outside the agency can critically evaluate the agency decisions. *See Calvert Cliffs' Coordinating Committee v. United States Atomic Energy Commission,* 146 U.S. App.D.C. 33, 38, 449 F.2d 1109, 1114 (D.C. Cir.1971).

The appellants also contend that the federal and state defendants improperly segmented the highway project for environmental purposes and failed to prepare an environmental impact statement evaluating the cumulative environmental impact of the highway. They contend that segmentation can limit the usefulness of an environmental assessment, and piecemealing proposed highway improvements in separate environmental statements should be avoided. *See generally,* Note, *Appropriate Scope of an Environmental Impact Statement: The Interrelationship of Impacts,* 1976 Duke L.J. 623 (1976). We do not reach this contention because the present controversy is moot.

---

**3.** A 231 page negative declaration was prepared for the only portion of highway construction for which no environmental impact statement was prepared. The negative declaration took into consideration some of the factors that are also often evaluated in an environmental impact statement. In this case, a combination of factors including the thoroughness of the nega-

tive declaration and the degree of completion of the highway rendered the issue presented in this case moot. For future reference, however, it should be noted that this court does not consider that a negative declaration will always satisfy the requirement of preparing an environmental impact statement. Each situation must be examined on a case-by-case basis.

The case is remanded to the district court to be dismissed as moot. *United States v. Munsingwear, Inc.*, 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950); *Friends of Earth, supra.*

REMANDED.