**UNITED STATES of America,
Appellant,**

v.

**(UNDER SEAL), Appellee.**

**In re GRAND JURY PROCEEDINGS
JOHN DOE #462.**

No. 85–1001.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 5, 1985.

Decided March 12, 1985.

See also 4th Cir., 745 F.2d 834; 4th Cir., 748 F.2d 871.

William G. Otis, Asst. U.S. Atty., Alexandria, Va. (Elsie L. Munsell, U.S. Atty., Justin W. Williams and Karen P. Tandy, Asst. U.S. Attys., Alexandria, Va., on brief), for appellant.

John M. Dowd, Washington, D.C. (Terence J. Lynam; Mark D. Nozette; Lisa J. Stark; Heron, Burchette, Ruckert & Rothwell, Washington, D.C., on brief), for appellees.

Before PHILLIPS, ERVIN and WILKINSON, Circuit Judges.

JAMES DICKSON PHILLIPS, Circuit Judge:

Before the court is an appeal by the government from an order of the district court disqualifying an assistant United States Attorney and two federal investigative agents from further participation in the grand jury investigation of the conduct of appellees. Because the controversy has now been mooted by events, we vacate the district court's order and remand to that court with directions to dismiss the proceeding because of mootness.

I

The grand jury investigation began in 1983 with appellees' suspected narcotics, tax, and currency violations as its principal subject. In the spring of 1984 the grand jury caused subpoenas to be served on appellees' attorneys seeking documents in the attorneys' possession. Appellees moved to quash the subpoenas on the ground that the documents were subject to the attorney-client privilege. The district court denied the motion as it affected most of the documents, but granted the motion as to the remaining documents. This court affirmed in part the district court's order, but remanded the case with instructions that several of the documents found to be privileged by the district court be removed from the files or redacted before the government was permitted to have them. *United States v. (Under Seal), In re: Grand Jury Proceedings, John Doe # 462,* 748 F.2d 871 (4th Cir.1984).

On Friday, November 23, 1984, one week after this court's order issued, Assistant United States Attorney Karen P. Tandy was notified that she could take possession of the nonprivileged and redacted documents. She inquired of the clerk of the district court as to whether the district court had segregated the privileged documents and had redacted those ordered redacted, since the clerk's remarks raised some concern that the judge had not yet done so. Upon being advised that the judge had done what was required, but without waiting for the court to order the documents unsealed, Tandy directed federal investigative agent Timothy Holleran to retrieve the documents.

The district court had not in fact redacted the materials. Tandy initially looked only at a letter from attorney Pittleman to appellees, dated June 16, 1982, then she left the box of documents to Holleran, who reviewed all the documents. Later in the afternoon, Tandy spent approximately an hour examining the documents. She found and segregated a group of files marked "Documents Ruled Privileged by the Fourth Circuit and/or to be Redacted." She also saw a set of papers prefaced by a cover letter from attorney Andrew Lipps. She skimmed the cover letter and fanned through the documents. These documents as well as the Pittleman letter, were then returned to the district court. The remainder of the documents were retained, and some, including the Pittleman letter, were introduced to a separate grand jury on November 27.

It was not until November 27 that Ms. Tandy's secretary compared numbers stamped on the documents obtained by Tandy to those on the list of privileged and nonprivileged documents prepared by the district court to see if any privileged documents remained in the box brought from the district court. Fourteen additional documents that had been ruled privileged by the district court were thereupon discovered and returned to the district court.

On November 28, Tandy and Assistant United States Attorney Joseph Aronica met with the district judge and informed him that privileged documents had been reviewed. When appellee's counsel was informed, a search was begun for the copies of the Pittleman letter, which the government had not yet realized was privileged. Seven copies were returned to the district court on December 3, 1984, and an eighth copy was returned on December 14.

On December 28, 1984, the district court heard evidence, found facts essentially as above summarized, and made the following conclusion:

> From the foregoing the court concludes that the remedy suggested by the United States, namely, no further use by the government of the privileged documents and their return to counsel for the [appellees], will not adequately maintain the integrity of the confidential attorney-client privilege, and cannot insure that those who have viewed the documents will not, even subconsciously, be affected by knowledge gained thereby in pursuing the investigation of the [appellees]. The court further concludes that the only adequate appropriate remedy is disqualification of the Assistant United States Attorney and two agents from further participation in the investigation.

The court then entered the following order:

> 1. Assistant United States Attorney Karen P. Tandy, United States Customs Special Agent Tim Holleran, and Internal Revenue Service Special Agent James Meckley are disqualified and prohibited from directly or indirectly participating in the investigation now being conducted by Grand Jury 83–2, or any subsequent grand jury investigation of [appellees], in furtherance of which the subpoenas, which were quashed in part by this court's order of June 8, 1984 and by the decision of the United States Court of Appeals for the Fourth Circuit (Nos. 84–1508, 1628, November 26, 1984), were issued. They are further enjoined from directly or indirectly revealing the contents of the privileged documents to any other person.

> 2. Assistant United States Attorney Karen P. Tandy shall forthwith file with the court under seal the notes or questions prepared by Special Agent Meckley and which she testified are still in her file.

> 3. Inquiry shall be made of Special Agent Holleran to determine whether he has any notes made as a result of his viewing of the documents which the said decisions of this court and the Court of Appeals has ruled are privileged. If any such notes exist they should be filed with the court under seal forthwith.

The government noted an appeal from this order and on January 2, 1985, filed a motion in this court to stay the order or, alternatively, to issue a writ of mandamus directing the district court to lift its order. On January 2, 1985, Judge Wilkinson of this court granted a stay until a three-member panel could act upon the stay motion. By order of January 18, 1985, a panel of this court extended Judge Wilkinson's stay order pending review of the disqualification order by appeal or mandamus and ordered the appeal expedited for hearing on February 1, 1985. Before the expedited appeal came on for hearing, the grand jury, with Ms. Tandy fully participating in its proceedings, returned an indictment against appellee on January 9, 1985.

## II

The government, as appellant, has suggested that the case has become moot by reason of a change of circumstances while the expedited appeal was pending.[1] Specif-

---

1. The appellees on the other hand have moved to dismiss the appeal for want of jurisdiction. Because the jurisdictional motion is fundamental, we feel obliged to address it. Doing so, we conclude that the disqualification order is, under the circumstances, appealable as a final order under 28 U.S.C. § 1291. In the peculiar context of this proceeding, the disqualification order was the terminal relief that might be granted the appellees as petitioners. It is therefore either a final judgment in the pure sense, if the proceeding be considered a free-standing one; or, in any event, a final decision on a collateral matter, per *Cohen v. Beneficial Indus-*

ically, it is pointed out that the grand jury proceedings, as they affected the appellees, have now terminated with the return of indictments and that this makes it now impossible for the court to give any effective relief for the specific violation of rights that the district court's order was designed to remedy. We agree, though with admitted discomfort that by this means the government shall have been able to violate both court decrees and adjudicated rights without any accountability in this proceeding.[2]

Passing the possibly difficult conceptual question of whether the appeal has been mooted in constitutional case or controversy terms, we conclude that, in any event, we should treat it as moot for prudential reasons. *See, generally,* 13A Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* 2d § 3533.1. These have to do both with our inability to give an effective remedy under the circumstances now developed and with the imprudence of deciding on the merits a difficult and sensitive constitutional issue whose essence has been at least substantially altered by supervening events; which is not likely to recur in its original form in respect of these appellees; and which in its altered form is now subject to determination in a more appropriate forum and litigation setting.

First off, in realistic terms we now lack the ability to give any effective and suitable remedy to the appellees (or to make it possible for the district court to do so) were we to conclude on the merits that the district court's disqualification order was free

of error. This results from the fact that as a practical matter the order's effect has been outrun by supervening events. The primary thrust of the order was prevention of government use in the ongoing grand jury investigation of knowledge wrongly obtained by its agents in violation of appellees' rights as determined in extant court orders. Arguably, it is true, the order could be construed to have some further collateral effects that are still alive; but any such effects are purely derivative of the primary effect and are of minimal significance in relation to that effect.[3] The primary effect of the order was of course effectively undercut once the grand jury investigation concluded as to appellees by the return of indictments against them. There is no judicial remedy—short of dismissal of the indictments—that we could now invoke to undo any prejudice that may have been suffered by appellees as a result of the government's use of its wrongly obtained evidence or knowledge to influence the return of indictments. *See Florida Wildlife Federation v. Goldschmidt,* 611 F.2d 547 (5th Cir.1980). Under the circumstances, we do not think that it would be appropriate to impose that draconian remedy in this proceeding as a substitute for the less drastic disqualification remedy ordered by the district court if upon review on the merits any remedy were found justified. Strongly supporting this conclusion is our awareness that the question of that ultimate remedy's appropriateness has now been squarely raised in the pending criminal prosecution of appel-

---

*trial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), if the proceeding be considered one ancillary to the earlier proceeding to have the materials in question declared privileged.

**2.** A discomfort increased by the fact that the mooting events occurred after we had stayed the order and expedited appeal, and that they occurred precisely as a result of government action thereby allowed to be taken free of the order. The impression possibly conveyed of deliberate judicial avoidance of decision in anticipation of mooting events is regrettable but sometimes unavoidable in fast-moving, last-min-

ute situations such as those precipitated by the government conduct here. *Cf. O'Brien v. Brown,* 409 U.S. 1, 5, 92 S.Ct. 2718, 2720, 34 L.Ed.2d 1 (1972).

**3.** The order not only disqualified the agents from participation in the then current grand jury investigation of appellees, but in "any subsequent grand jury investigation of [appellees] in furtherance of which the [quashed subpoenas] ... were issued."

It also affirmatively ordered Tandy and one of the investigative agents to file certain notes related to the privileged materials.

lees.[4] There it may more appropriately be addressed in the course of resolving the more familiar and less sensitive issue of whether particular prosecutorial misconduct justifies dismissal of an indictment already returned. *Cf. United States v. Sturgeon,* 529 F.2d 993, 994–95 (8th Cir. 1976).

The sensitivity and difficulty of the dispositive issue as we would necessarily confront it further persuade us that under present circumstances we should not, in prudence, address the merits of the appeal. *See Kremens v. Bartley,* 431 U.S. 119, 133–34 & n. 15, 97 S.Ct. 1709, 1717 & n. 15, 52 L.Ed.2d 184 (1977). That issue would concern at bottom the power of federal courts to control grand jury investigations by the disqualification device as a means of suppressing wrongly obtained evidence, or as an exercise of general supervisory powers. This is an issue that we would confront—so far as we are advised—as one of first impression. Its seriousness and difficulty are made readily apparent simply by reference to *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) (court may not suppress for grand jury use evidence unconstitutionally obtained by police officers), and *United States v. Leon,* — U.S. —, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (exclusionary rule subject to good faith exception), both principally relied upon by the government.

We are further satisfied that the merits issue that would confront is not one that—if constitutionally we might—we should review because of its likelihood of recurrence coupled with its ready evasion of review. That it is an issue that easily evades review is demonstrated by the events of this case—as largely controlled by the government. But it is not also an issue likely to recur—certainly not in respect of these appellees. *See City of Los Angeles v. Lyons,* 461 U.S. 95, 109, 103 S.Ct. 1660, 1669, 75 L.Ed.2d 675 (1983). The government here has confessed the wrongdoing of its agents and asserts no general justification, but only good faith inadvertence in the particular case. We must therefore assume that the conduct will not be intentionally repeated, and indeed that greater caution will be exercised to avoid inadvertent repetitions in the future. *Cf. Preiser v. Newkirk,* 422 U.S. 395, 402–03, 95 S.Ct. 2330, 2334–35, 45 L.Ed.2d 272 (1975) (reliance upon official's good faith as basis for mootness).

We therefore vacate the disqualification order of the district court and remand to that court with directions to dismiss this proceeding as moot. *United States v. Munsingwear,* 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950). Dismissal on that basis will, of course, leave open and unresolved all liability and remedial questions respecting the violation of appellees' rights by the government's conduct that may be raised in other proceedings. *See id.* at 40, 41, 71 S.Ct. at 107.

SO ORDERED.

---

4. We have been advised by counsel for appellees that in the pending criminal prosecution under the grand jury indictments appellees have expressly moved for dismissal of the indictment for the same prosecutorial misconduct that prompted the disqualification order.