820 F.2d 1219
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
DISABLED IN ACTION OF BALTIMORE, John A. Coffin, Dawn
McKawl, Bearl Reuter, individually and on behalf
of those similarly situated, Plaintiffs,
and
Gary Kritzer, individually and on behalf of those similarly
situated, Appellant,
v.
Lowell K. BRIDWELL, Secretary, Maryland Department of
Transportation, David A. Wagner, Administrator, Mass Transit
Administration, Andrew L. Lewis, Jr., Secretary, United
States Department of Transportation, Peter N. Stowell,
Regional Representative, Urban Mass Transportation
Administration--Region Three, individually and in their
official capacities, Appellees.
DISABLED IN ACTION OF BALTIMORE, Gary Kritzer, John A.
Coffin, Dawn McKawl, individually and on behalf of
those similarly situated, Plaintiffs,
and
Bearl Reuter, individually and on behalf of those similarly
situated, Appellant,
v.
Lowell K. BRIDWELL, Secretary, Maryland Department of
Transportation, David A. Wagner, Administrator, Mass Transit
Administration, Andrew L. Lewis, Jr., Secretary, United
States Department of Transportation, Peter N. Stowell,
Regional Representative, Urban Mass Transportation
Administration--Region Three, individually and in their
official capacities, Appellees.
DISABLED IN ACTION OF BALTIMORE, Appellant,
and
Gary Kritzer, John A. Coffin, Dawn McKawl, Bearl Reuter,
individually and on behalf of those similarly
situated, Plaintiffs,
v.
Lowell K. BRIDWELL, Secretary, Maryland Department of
Transportation, David A. Wagner, Administrator, Mass Transit
Administration, Andrew L. Lewis, Jr., Secretary, United
States Department of Transportation, Peter N. Stowell,
Regional Representative, Urban Mass Transportation
Administration--Region Three, individually and in their
official capacities, Appellees.
 Nos. 84-2275 to 84-2277.
 United States Court of Appeals, Fourth Circuit.
 Argued April 8, 1987.
Decided June 2, 1987.
 
 Before PHILLIPS, ERVIN and CHAPMAN, Circuit Judges.
 Andrew D. Levy (Frank, Bernstein, Conaway & Goldman; Richard Bolan, on brief), for appellants.
 Mark W. Pennak, Civil Division, Department of Justice (Richard K. Willard, Assistant Attorney General; W. Thomas Dillard, United States Attorney; William Kanter, Department of Justice, on brief); Joseph S. Kaufman (Kenneth D. Pack; Melnicove, Kaufman, Weiner, Smouse & Garbis, P.A., on brief), for appellees.
 PHILLIPS, Circuit Judge:
 
 
 1
 Handicapped residents of the City of Baltimore brought a class action against various state and federal officials claiming that the mass transit system in Baltimore was being operated in a manner that violated their rights under Sec. 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. Sec. 794, and Sec. 16 of the Urban Mass Transportation Act of 1964 (UMT Act), as amended, 49 U.S.C. Sec. 1612. Specifically they claimed that the state defendants--the Secretary of Maryland Department of Transportation and the Administrator of the Maryland Mass Transit Administration in the Baltimore area--were violating Sec. 504 by failing to equip their bus fleet with wheelchair lifts and that the federal defendants--the Secretary of the Department of Transportation and the Regional Representative of the Urban Mass Transportation Administration (UMTA)--had violated their rights by approving federal grants to the state defendants when the federal defendants knew or should have known that the state defendants had failed to make satisfactory "special efforts" to make transit available to the handicapped as required by the UMT Act. The district court granted summary judgment for defendants on the basis of uncontroverted evidence that the state defendants were in full compliance with then extant DOT regulations implementing Sec. 504. This appeal followed. Because we find that the action has been mooted by the promulgation of new regulations while this appeal was pending, we dismiss the appeal.
 
 
 2
 * The UMT Act was passed in 1970. Section 16(a) of the Act declared it to be
 
 
 3
 the national policy that elderly and handicapped persons have the same right as other persons to utilize mass transportation facilities and services; that special efforts shall be made in the planning and design of mass transportation facilities and services so that the availability to elderly and handicapped persons of mass transportation which they can effectively utilize will be assured; and that all Federal programs offering assistance in the field of mass transportation (including the programs under this chapter) should contain provisions implementing this policy.
 
 
 4
 49 U.S.C. Sec. 1612(a). The Federal Aid Highway Act of 1973 (FAHA), Pub.L. No. 93-87, Sec. 165, 88 Stat. 2283, reprinted as amended in 1974 at 23 U.S.C. Sec. 142 notes, provides that transportation projects funded under that Act must be planned, constructed, and operated to allow effective utilization by the elderly and handicapped and bars the Secretary from approving programs that do not comply with the Act.
 
 
 5
 The Urban Mass Transit Administration (UMTA) adopted "special efforts" regulations in 1976 to implement the UMT Act and the FAHA. See 49 C.F.R. pts. 609, 613 (1976). These regulations allowed local determination of the type of services to be provided and set out specific examples of how Sec. 16's special efforts requirement could be met.
 
 
 6
 Later in 1976 President Ford directed the Department of Health, Education and Welfare to establish guidelines for all agencies in implementing Sec. 504 of the Rehabilitation Act of 1973. The guidelines then adopted by the HEW required that "all recipients of federal funds 'mainstream' handicapped persons, that is, integrate such persons into the same programs available to others, rather than treat them as a separate group in 'special' programs." American Public Transportation Association (APTA ) v. Lewis, 655 F.2d 1272, 1275 (D.C.Cir.1981). Because the 1976 regulations did not conform to the guidelines, new regulations were promulgated in 1979. See 49 C.F.R. Secs. 27.81-27.107 (1980). These required, inter alia, that fixed route buses be made accessible to the handicapped and that separate programs be created only when necessary to assure equal opportunity.
 
 
 7
 The 1979 regulations also were short-lived. In 1981 the Court of Appeals for the District of Columbia held that the 1979 regulations exceeded the DOT's authority to enforce [Sec. 504 of] the Rehabilitation Act. APTA, 655 F.2d at 1280. The court did not decide whether the regulations were within the DOT's authority to enforce the UMT Act and the FAHA because it found that the regulations were probably promulgated pursuant to Sec. 504 alone. The court remanded to the DOT for a determination whether the regulations were intended to enforce a statutory mandate other than Sec. 504.
 
 
 8
 The decision of the D.C. Circuit in APTA led the DOT to issue new regulations on July 20, 1981. 49 C.F.R. Secs. 27.7-27.77 (1981). This third set of regulations essentially reincarnated the 1976 regulations, allowing localities to determine what "special efforts" they would make to serve the handicapped. Like the 1976 regulations, the 1981 regulations included an advisory appendix which set out examples of how localities might meet the special efforts requirement. In pertinent part Appendix A to the 1981 regulations provided:
 
 
 9
 UMTA will not specify a program design to meet the "special efforts" requirement. However, the following examples are illustrative of a level of effort that will be deemed to satisfy this requirement with respect to wheelchair users and semiambulatory persons:
 
 
 10
 1. A program for wheelchair users and semiambulatory handicapped persons that will involve the expenditure of an average annual dollar amount equivalent to a minimum of 3.5 percent of the financial assistance that the urbanized area receives under section 5 of the UMT Act.... These "3.5 percent funds" may be derived from sources other than section 5. The term "average" permits lower expenditure years to be balanced by higher expenditure years but does not permit an initial delay in implementing projects. Projects that qualify as local "special efforts" for wheelchair users and other semiambulatory persons under the initial paragraphs of this advisory information would be counted in computing the 3.5 percent.
 
 
 11
 49 C.F.R. Sec. 27.77(a) (Appendix A) (1981).
 
 
 12
 Plaintiffs initiated this action in November 1981 while the 1981 regulations were in effect. Defendants moved for summary judgment, arguing that the court should defer to the interpretation of Sec. 504 embodied in the 1981 regulations and that they were in compliance with those regulations. Defendants presented uncontroverted evidence that they expended at least 3.5% of the federal assistance they received under the UMT Act on services for the handicapped.[1] According to defendants, because the 1981 regulations specified that this level of expenditure satisfied the requirements of Sec. 504, that evidence entitled them to summary judgment.
 
 
 13
 The district court agreed. It rejected plaintiffs' argument that the 1981 regulations were not entitled to deference because of their failure to implement the congressional intent embodied in Sec. 504 and because the DOT failed to comply with the APA when it promulgated them. The district court found that the DOT was excused from failure to comply with the usual notice and comment requirements by the "good cause" exception of 5 U.S.C. Sec. 553(d). And the court agreed with the First Circuit's holding in Rhode Island Handicapped Action Committee v. Rhode Island Public Transit Authority, 718 F.2d 490, 496 n. 10 (1st Cir.1983), that the 1981 regulations were entitled to deference because "[t]he kind of distance from the statute and inconsistency of interpretation that justifies giving an agency interpretation of a statute no deference" was not present. The court then conducted its own analysis of the requirements of Sec. 504 and concluded that the relief sought by plaintiffs--access to the transportation system used by the general public--was not authorized by Sec. 504. The court further noted that because experts differed on whether general access or specialized services best served the handicapped it could not be said that a choice of either course of action was discriminatory. The court's ultimate conclusion, however, was that deference to agency interpretations of the statutory directives was appropriate and that defendants, having complied with the regulations, were entitled as a matter of law to summary judgment. Judgment for defendants was accordingly entered on September 28, 1984. This appeal followed.
 
 II
 
 14
 While this appeal was pending, on May 23, 1986, the DOT promulgated yet another set of superseding regulations respecting the matters here at issue, this time in response to Congress' enactment in 1982 of the Surface Transportation Act of 1982, 49 U.S.C. Sec. 1612(d). See 49 C.F.R. Secs. 27.81-27.103 (1986). Section 317(c) of that Act directed the DOT to promulgate regulations that established "minimum criteria for the provision of transportation services to handicapped and elderly individuals." 49 U.S.C. Sec. 1612(d). Senator Cranston, one of the sponsors of the provision, stated that the Act was intended to "reject ... as unsatisfactory" the 1981 regulations which did not include any such criteria.
 
 
 15
 These new regulations fully replaced the 1981 regulations and required transportation systems to submit proposed programs to comply with the new regulations to the DOT for approval within one year of the June 23, 1986, effective date. Once approval is obtained the program must be implemented "as soon as reasonably feasible ... but in any case within six years of the initial ... approval of [the] program." Section 27.95(a). Section 27-87(d) of the new regulations provides that systems must continue to provide the same level of service provided under the 1981 regulations until their new programs are fully implemented.
 
 
 16
 Based upon this intervening occurrence, defendants here contend that plaintiffs' attack in this action is upon a set of regulations that no longer exist. According to defendants, invalidating the 1981 regulations would not bring any relief to plaintiffs because defendants are currently operating under the 1986 regulations, not the superseded 1981 regulations. Defendants contend that the court does not have the validity of the 1986 regulations before it and therefore cannot reach the question whether those regulations fairly implement the requirements of Sec. 504. On these grounds, defendants have urged us to dismiss this action as moot in its present form.
 
 
 17
 Plaintiffs respond that they are not attacking the validity of either the 1981 or 1986 regulations. They assert that their action is brought directly under Sec. 504--alleging that defendants' conduct violates that statute notwithstanding any purported conformity to implementing regulations. According to plaintiffs, it is the defendants who have injected the validity of the 1981 regulations into the action by asserting their compliance with those regulations as a defense to the charge that they are violating the statute.
 
 III
 
 18
 We agree with defendants that the action should be dismissed as moot. Though there may technically still exist a constitutional case or controversy, prudential considerations require this course. See United States v. (Under Seal ), 757 F.2d 600, 603 (4th Cir.1985).
 
 
 19
 Despite plaintiffs' protestations to the contrary, it is clear that the gist of their action is the claim that compliance with the 1981 regulations alone was not sufficient to satisfy the requirements of Sec. 504. In asserting that the expenditure of a certain amount of funds cannot alone bring a transit authority into compliance with Sec. 504, plaintiffs are directly attacking the validity of the DOT's interpretation of Sec. 504 as embodied in the 1981 regulations. The 1981 regulations no longer exist and it would be fruitless to allow plaintiffs to establish their invalidity. Defendants' conduct is now dictated by an entirely new set of regulations, and defendants are now attempting to conform their conduct to that presently existing, unchallenged body of law.
 
 
 20
 The reality of the present situation is that no court could find for or against plaintiffs in this action as presently structured without first determining whether the 1981 regulations were entitled to deference. A determination that these regulations were not entitled to deference would be a necessary prerequisite to holding, as plaintiffs urge, that defendants are violating Sec. 504. Thus any court considering this case would be compelled to consider the validity of superseded regulations. A declaration of their invalidity would be a vain act. Plaintiffs seek only injunctive, prospective relief; they claim no remedy for past violations of Sec. 504.
 
 
 21
 This means that as a practical matter, neither we nor the district court could now grant plaintiffs any meaningful relief in this action. Intervening events have simply overrun the basis of their claim.
 
 
 22
 Regrettable though it may be that plaintiffs have in effect been forced to shoot at a moving target, this practical consequence of the superseding regulations cannot be avoided. The legal regime that is presently ordering plaintiffs' rights in the underlying matter at issue is not now effectively subject to attack in this action.
 
 
 23
 For these reasons we dismiss the appeal as moot and remand to the district court with directions to dismiss the action as moot. United States v. Munsingwear, Inc., 340 U.S. 36 (1950).
 
 
 24
 APPEAL DISMISSED.
 
 
 
 [1]
 In a footnote of their brief plaintiffs take issue with the district court's conclusion that the amount of money spent on providing services to anyone who was unable because of a handicap to use regular public transportation could be considered in determining whether the Authority was within the 3.5% spending requirement. Plaintiffs argue that under the language of the example only funds spent on the wheelchair-bound and semiambulatory can be considered. According to plaintiffs, the term "semiambulatory" includes only those persons who require assistance to walk. We agree with the district court that as used in the example semiambulatory has a broader meaning