**Victoria SMYTH, et al., Plaintiffs,**

v.

**Clarence H. CARTER, Defendant.**

**Civil Action No. 96–0089–H.**

United States District Court,
W.D. Virginia,
Harrisonburg Division.

June 25, 1996.

Steven Lloyd Myers, Virginia Poverty Law Center, Inc., Richmond, VA, Edward M. Wayland, North Garden, VA, for Victoria Smyth, Patricia Montgomery, Lynn Winchester.

James S. Gilmore, III, William Henry Hurd, Siran S. Faulders, Office of the Attorney General, Richmond, VA, for Clarence H. Carter.

## MEMORANDUM OPINION

MICHAEL, Senior District Judge.

Plaintiffs Victoria Smyth, Patricia Montgomery, Angela Smyth (Victoria's child), and Casey Montgomery (Patricia's child)[1] are re-

---

**1.** Plaintiffs are proceeding in this action under pseudonyms, because the of the sensitive nature of the inquiry regarding the paternity of minors.

Plaintiff Lynn Winchester and her children, C. Winchester and K. Winchester, were originally

cipients of Aid to Families with Dependent Children ("AFDC"). Defendant is the Commissioner of the Virginia Department of Social Services ("VDSS"), sued in his official capacity as administrator of Virginia's AFDC program. Plaintiffs allege a violation of the Social Security Act, 42 U.S.C. § 601 *et seq.* ("SSA"), the federal regulations promulgated under the SSA, and the Equal Protection Clause of the Fourteenth Amendment.

Plaintiffs claim that VDSS has denied or reduced their AFDC benefits because the agency has deemed them "noncooperative" because they have not provided the agency with the name of their children's father. According to plaintiffs, their failure to provide VDSS with the required paternity information is justified because they neither know nor can ascertain the identity of their children's father.[2] Plaintiffs argue that the SSA and its accompanying regulations require them only to provide information that they know or reasonably can obtain. Plaintiffs contend that so long as they engage in a diligent investigation and tell the VDSS everything they know in connection with paternity, they have fulfilled their obligation to cooperate with the agency to the extent required by federal law. Plaintiffs argue that VDSS cannot, consistent with SSA, deem them "noncooperative" based upon their failure to provide paternity information if they are unable to provide it. Further, plaintiffs maintain that even aside from the SSA, defendant violates federal law by distinguishing between women who know the name of their children's father and those who do not. Because the latter qualify for public assistance while the former are denied benefits, plaintiffs discern unconstitutional discrimination against illegitimate children, in violation of the Equal Protection Clause.

Plaintiffs move the court for a preliminary injunction to enjoin defendant from denying benefits to AFDC applicants or recipients who neither know nor can ascertain paterni-

ty. Plaintiffs also ask the court to certify them as a class.

For the reasons stated below, plaintiffs' motion for a preliminary injunction is granted, and plaintiffs' motion for class certification is denied.

### I.

■ Plaintiffs' motion for a preliminary injunction is governed by the test set forth in *Blackwelder Furniture Co. v. Seilig Manufacturing Co.,* 550 F.2d 189, 196 (4th Cir. 1977), pursuant to which four factors must figure into the court's analysis, the weight given to each depending on the strength of the other factors. First, the court must make a determination that plaintiff will suffer irreparable injury if he does not receive injunctive relief. Once this finding has been made, the court must assess the likelihood of harm to the defendant if the court issues an injunction against him and then balance this harm against the injury the plaintiff will suffer if the court denies his motion for injunctive relief. Subsequently, the court must establish that the plaintiff is likely to succeed on the merits, or if the balance in the previous step clearly favors the plaintiff, the court need only satisfy itself that the plaintiff has raised substantial and serious questions on the merits. Finally, the court should consider whether public interest favors injunctive relief. *Multi–Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.,* 22 F.3d 546, 551 (4th Cir.1994) (quoting *Direx Israel Ltd. v. Breakthrough Medical Corp.,* 952 F.2d 802, 812–13 (4th Cir.1991)).

■ In this case, one need not search long to find irreparable injury to plaintiffs. They are poor enough to have qualified for public assistance. They rely upon AFDC benefits to sustain themselves. Most importantly, plaintiffs have children, who will suffer through no fault of their own without govern-

---

also parties to this suit, but have subsequently dropped out as named plaintiffs.

**2.** Plaintiff Smyth asserts that she was heavily involved with alcohol and had sexual relations with several men at the time of her child's conception. She cannot identify any of her past sexual partners as her child's father at this time.

Plaintiff Montgomery provided VDSS with two names, but both men were eliminated as possibilities after blood tests were conducted; subsequent efforts to ascertain the identity of the only other man Plaintiff Montgomery claims could be her child's father have been fruitless.

ment aid. *See Powell v. Austin,* 423 F.Supp. 533, 535 (E.D.Va.1976) (citing *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)). Counsel for defendant candidly conceded that the present policy of VDSS would in fact deprive some children of aid from the AFDC program. Defendant undertakes to justify this adverse effect on some children by arguing some sort of "balancing test" by which the objectives of the agency might be accommodated, though admittedly at a cost to these children. As defendant argues, his new policy may very well assist VDSS in ultimately determining paternity in some cases where the AFDC applicants or recipients initially refuse to provide the agency with the information although it is in their possession. As discussed below, however, the intent of Congress in adopting the AFDC program was to provide some minimal assistance to children. That aid to children must be the polestar to which this court must look for its guidance, even if doing so may to some degree undercut the efforts of defendant in establishing paternity in some cases. While it is presently not certain how many children would be adversely affected by defendant's policy, the best information presently available indicates more than a "de minimis" number. This analysis leads to the conclusion that these plaintiffs—and their children—will suffer irreparable injury.

The countervailing harm to defendant consists mainly of the financial and administrative burden VDSS would bear should a preliminary injunction issue. Despite defendant's protestations to the contrary, the economic cost that would have to be incurred by defendant to comply with a preliminary injunction, although certainly not nonexistent, would not be unduly severe. A preliminary injunction is a temporary measure, and such burdens as may be imposed pursuant to it would be of limited duration. Moreover, little less than one year ago, before the policy of VDSS was changed, the agency in fact granted AFDC benefits to all otherwise eligible applicants who attested that they neither knew nor could reasonably ascertain paternity. Hence, the agency presumably is fully familiar with operating its program in this manner; the learning curve will not be steep. For purposes of a pre-

liminary injunction, return to this policy will require not much more than promulgation of the reversal to the agency's staff and, of course, disbursement of funds to otherwise qualified AFDC applicants or recipients. At the very least, the court doubts that an enormous number of staff hours and computer time will be expended to make the necessary adjustments. Defendant reminds the court that it will likely be unable to recover any funds paid over to plaintiffs, should he subsequently prevail on the merits. Just as plaintiffs' poverty might effectively bar defendant from recouping the funds, so the Eleventh Amendment would probably preclude plaintiffs from recovering any benefits rightfully due them. Weighing the harm from wrongful expenditure of funds by VDSS against that resulting from the erroneous denial of funds to plaintiffs yields a balance decidedly in favor of plaintiffs. Either children or a state agency will take a hit, and this court believes that under defendant's program a child would feel the heavier blow.

At this stage of the litigation, it appears to the court that plaintiffs will likely succeed on the merits. Because Virginia receives federal funding in administering its VDSS program, it is bound by certain provisions of the SSA. Relevant to this case is the requirement that

> [a] State plan ... must provide that, as a condition of eligibility for aid, each applicant or recipient will be required ... to cooperate with the State (i) in establishing paternity of a child born out of wedlock with respect to whom aid is claimed, and (ii) in obtaining support payments for such applicant and for a child with respect to whom such aid is claimed, ... unless (in either case) such applicant or recipient is found to have good cause for refusing to cooperate....

42 U.S.C. § 602(a)(26)(B).

Federal regulations define cooperation in establishing paternity, in pertinent part, to include providing information "known to, possessed by, or reasonably obtainable by the applicant or recipient," and "[p]roviding information, or attesting to the lack of informa-

tion, under penalty of perjury...." 45 C.F.R. §§ 232.12(b).

■ This language clearly operates to preclude states from disregarding an attestation to lack of information by an AFDC recipient or applicant, and has been so interpreted. As the court in *Tomas v. Rubin,* 926 F.2d 906, 910 (9th Cir.1991), stated,

> [t]o give meaning to the inclusion of the attestation in definition of cooperation, an attestation of lack of information should create a presumption of cooperation that may be overcome by showing that the attestation was false, or that the applicant failed to cooperate in [another] respect[ ] under 45 C.F.R. § 232.12(b).

*See also Doston v. Duffy,* 732 F.Supp. 857, 871 (N.D.Ill.1988) (stating that a policy that deems AFDC recipients or applicants noncooperative even if they have attested under oath to lack of information violates 45 C.F.R. § 232.12(b)).

Defendant concedes that unless an AFDC recipient or applicant supplies VDSS with information on paternity she will be denied benefits for noncooperation, even if she offers to attest that she does not know who is the father of her child and has no reasonable means of obtaining the information. Although this policy contradicts the plain language of applicable federal regulations, defendant argues that his policy nonetheless conforms to the dictates of federal law. Defendant invites the court to engage in unwarranted judicial activism when he asks the court to accept an interpretation of federal regulations in defiance of their plain meaning. First, defendant urges that the words in the regulations cannot mean what they say because of the absurd result to which their plain meaning would lead. The so-called absurdity is that women alleging rape are required by the regulations to corroborate their claim, 45 C.F.R. § 232.43, whereas women who engage in consensual sex would escape with a mere attestation. But this outcome is not necessarily illogical. The United States Department of Health and Human Services ("HHS"), the agency charged with implementing the pertinent regulations,

may very well have believed that rape would be easier to corroborate than ignorance of paternity. Defendant's second argument is based on what defendant believes to be HHS's view of the regulations at issue, as allegedly expressed during negotiations between HHS and Virginia. Counsel for defendant made certain representations concerning negotiations with HHS. The court accepts the representations of counsel as being an accurate summary of defendant's understanding of HHS's position. According to defendant, HHS assured Virginia that it did not need to obtain a federal waiver from 45 C.F.R. § 232.12(b) to implement its current policy now in dispute; from this defendant infers that HHS construes § 232.12(b) consistently with VDSS. The court, however, cannot ignore officially promulgated regulations in favor of a nonbinding opinion expressed by an HHS official during private negotiations. Finally, defendant makes some noise about a waiver Virginia has obtained from HHS that permits VDSS to sanction for noncooperation (a waiver from § 402(a)(26) and accompanying regulations). This waiver, clearly, sheds no light on the case before the court, where the main issue turns on how noncooperation must be defined. Given the clear meaning of the regulations, impossible to square with VDSS's contrary policy, the court finds that plaintiff likely will succeed on the merits on its statutory claim.[3]

Finally, the court finds that it would be in the public interest to continue payment of benefits to otherwise eligible AFDC applicants or recipients who attest that they neither know nor can ascertain paternity, but this court cannot in this matter sit to judge the morality of plaintiffs. Nothing that the court undertakes here is in any way to be construed as condonation or acquiescence in what is alleged to be the conduct of plaintiffs. Having said that, it nonetheless must be the obligation of this court to analyze this matter only in terms of the applicable federal statute, federal regulations, and state regulations. Congressional intent, as identified and delimited by the regulations of HHS, must govern the court in its analysis of the issues

---

**3.** The court does not reach the question whether plaintiffs are likely to succeed on their Equal

Protection claim given its finding that plaintiffs will likely prevail on their statutory claim.

here. That purpose, as manifested in the AFDC program, is to secure basic subsistence for children whose parents' financial status qualifies them for public assistance. Although the public has a very significant interest in welfare reform that discourages irresponsible behavior, the more immediate and pressing need is to help the children, not to punish them and their parents.

Given that all four *Blackwelder* factors cut in favor of plaintiffs, the court finds that they are entitled to a preliminary injunction, enjoining defendant from denying plaintiffs AFDC benefits based solely on their inability to provide VDSS with paternity information after they have attested to a lack of information.

## II.

▮ Pursuant to Rule 23 of the Federal Rules of Civil Procedure, plaintiffs seek certification for a class consisting of

[a]ll children in Virginia who were born out of wedlock and their mothers, whose families have been or will be subjected to loss of cash assistance or other [AFDC] benefits and services ... because such mothers have failed, or will in the future fail, to provide requested information about the fathers of such children where such mothers do not know or possess, and cannot reasonably obtain the requested information.

Pls.' Mem. in Supp. of Class Certification at 2.

Rule 23(a) contains four prerequisites to class certification including (1) that the class be so numerous as to make joinder impracticable; (2) that there be questions of fact or law common to the class; (3) that the claims of the named plaintiffs be typical to those of the class; and (4) that the named plaintiffs will fairly and adequately protect the interests of the class.[4]

▮ Because the court finds that the named plaintiffs cannot adequately represent the class, there is no need to determine whether plaintiffs can otherwise satisfy Rule 23. Plaintiffs no doubt have a personal stake in the litigation and have no obvious personal conflict with the other potential class members. Nor are there any questions regarding the competency of counsel. Nonetheless, there appears to be a history of misrepresentation and perhaps dishonesty, as well as some evidence of a lack of understanding of this case on the part of plaintiffs that cannot be compensated by the enthusiasm of their lawyers. The named plaintiffs in a class action need not be the best representatives of the class, and to say that they are not expected to understand every detail of their case is to understate the matter. Still, they must be able, at minimum, to make important nondelegable decisions about the course of the litigation; also, if the named plaintiffs are evasive, untruthful, or lack credibility, this weighs heavily against them as adequate class representatives. *See Greene v. Brown*, 451 F.Supp. 1266, 1275–76 (E.D.Va.1978) (denying to permit class representation by "a person lacking either in candor or in understanding" who was "not willing to be entirely open and candid in discovery" despite capabilities of her attorney).

In the present case, Plaintiff Smyth has, at best, understated her monthly expenditures to VDSS on a welfare application; used a false name on a rental application to obtain an apartment; misrepresented her living arrangement to an elementary school she wanted her child to attend; and evasively answered deposition questions about her personal relationships (put in issue by this lawsuit). Plaintiff Montgomery has been untruthful with VDSS about the paternity of one of her children (Casey) and herself expressed a lack of understanding regarding this litigation—it seemed "weird" to her and she "really didn't understand it." Depositions of both plaintiffs have revealed an unwillingness to take on responsibility—for instance, Plaintiff Smyth quit a job because the house in which she worked was filthy and smelled, and Plaintiff Montgomery declared that she would not be able to assume even the responsibility of babysitting a neighbor's child.

The court does not recount these facts to pass moral judgment, but only to explain that plaintiffs' misrepresentation and irresponsi-

---

4. Plaintiffs seeking class certification must also satisfy one of the requirements in Rule 23(b).

bility might very well harm the interests of the class members they seek to represent. Therefore, the court cannot certify a class represented by these plaintiffs.

An appropriate Order shall this day issue.

### *ORDER*

For the reasons stated in the accompanying Memorandum Opinion, it is this day ADJUDGED AND ORDERED as follows:

(1) Plaintiffs' motion for a preliminary injunction shall be, and it hereby is, granted. Defendant shall be, and he hereby is, enjoined from denying plaintiffs benefits to which they are otherwise entitled after they have provided information known to them or reasonably obtainable by them or have attested under penalty of perjury that they lack information and cannot reasonably obtain information regarding paternity.

(2) Plaintiffs' motion for class certification shall be, and it hereby is, denied.

It appearing to the court that plaintiffs in this case—otherwise eligible for welfare benefits because of their financial status—are not able to post bond pursuant to Fed. R.Civ.P. 65(c), the requirement for posting of bond shall be, and it hereby is, waived.

The Clerk of the Court is hereby directed to send a certified copy of this Order and accompanying Memorandum Opinion to all counsel of record.