832 F.2d 294
 42 Ed. Law Rep. 717
 S-1 and S-2, By and Through their parents and Guardians Ad
Litem; P-1 and P-2; P-1 and P-2, individually,
Plaintiffs-Appellees,
v.
C.D. SPANGLER, Jr., Chairman, State Board of Education of
North Carolina; The State Board of Education of North
Carolina; C.D. Heidgerd, Hearing Officer, Asheboro City
Board of Education, Defendants-Appellants,
and
The Asheboro City Board of Education; Mary Smitherman, Defendants.
 No. 87-2521.
 United States Court of Appeals,
Fourth Circuit.
 Argued July 1, 1987.
Decided Nov. 2, 1987.
 
 Edwin Marion Speas, Jr., Sp. Deputy Atty. Gen. (Lacy H. Thornburg, Atty. Gen., Laura E. Crumpler, Asst. Atty. Gen., Kaye R. Webb, Asst. Atty. Gen., Raleigh, N.C., on brief), for defendants-appellants.
 David B. Puryear, Jr. (A. Frank Johns, Booth, Harrington, Johns & Campbell, Greensboro, N.C., on brief), for plaintiffs-appellees.
 Before PHILLIPS, ERVIN, and WILKINSON, Circuit Judges.
 JAMES DICKSON PHILLIPS, Circuit Judge:
 
 
 1
 This Sec. 1983 action by parents of handicapped children challenges the North Carolina State Board of Education's refusal to allow hearing officers appointed under the Education of the Handicapped Act (EHA), 20 U.S.C. Sec. 1400 et seq., to award tuition reimbursement as a remedy for violations of the Act. Because the underlying controversy has now been mooted by events, we vacate the district court's order and remand to that court with directions to dismiss the action as moot, except for an ancillary claim for costs and attorney's fees.
 
 
 2
 * S1 and S2 are handicapped children enrolled in the Asheboro, North Carolina city schools. In the fall of 1983, after notifying the principal at the children's public school of their intentions, their parents enrolled them at their own expense in a private school for one-half of each school day to receive special education services.
 
 
 3
 The following school year, the parents demanded that the Asheboro City Board of Education (City Board) provide the children with an individualized education program comparable to that provided at the children's private school or, alternatively, provide transportation and tuition for the children to continue at the private school for the 1984-85 school year. The parents premised their demand on the EHA, which the parents claimed the City Board was violating by failing to provide their children with the "free appropriate public education" guaranteed by the Act, 20 U.S.C. Sec. 1412(1). The parents also demanded tuition reimbursement for the 1983-84 school year, claiming that the city schools failed to notify them during that school year of their federal right to receive free special education services as required by the EHA.
 
 
 4
 The City Board eventually placed the children appropriately in the city school system, but the City Board refused the parents' tuition reimbursement claim for the 1983-84 school year and for the period during the fall of 1984 before the City Board and parents negotiated a placement. When the City Board denied their tuition reimbursement claim, the parents demanded a "due process hearing" pursuant to N.C.Gen.Stat. Sec. 115c -116, a statute enacted pursuant to the EHA, 20 U.S.C. Sec. 1415(b)(2). The appointed hearing officer, however, declared that he lacked authority to award tuition reimbursement, or make findings of fact attendant to a tuition reimbursement claim, and so refused to hear the parents' complaint. The parents then petitioned the North Carolina State Board of Education (State Board) to rule either that the hearing officer had authority to hear their claim or, alternatively, to amend the state regulations enacted pursuant to the EHA to confer such authority on him. The State Board denied the parents' petition.
 
 
 5
 The parents then instituted this action under 42 U.S.C. Sec. 1983 against the City Board, the State Board and the Chairman of the State Board, C.D. Spangler, Jr., alleging the deprivation of procedural rights secured by the EHA and applicable federal regulations, 34 C.F.R. Sec. 104.31 et seq. Relying primarily on Burlington School Committee v. Massachusetts Department of Education, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985), the parents alleged that the City Board, acting by and through its duly appointed hearing officer, had deprived them of procedural rights secured by federal law when it refused to decide their tuition reimbursement claim. The parents further alleged that the State Board and Chairman Spangler had deprived them of federally guaranteed procedural rights when it refused to interpret or amend state regulations to permit the hearing officer to decide their tuition reimbursement claim. The parents sought to recover tuition expenses from the City Board or, in the alternative, the following: a declaration that the state rules preventing hearing officers from deciding tuition reimbursement claims violated the parents' rights under federal law, an order enjoining Spangler and the State Board from promulgating and enforcing these rules, and an order compelling the City Board and its hearing officer to conduct a hearing on this particular reimbursement claim. The parents also sought costs and attorney's fees from all defendants, under 42 U.S.C. Sec. 1988 and 29 U.S.C. Sec. 794a.
 
 
 6
 On December 31, 1986, the district court granted the parents' motion for summary judgment on the claims for injunctive and declaratory relief, concluding that the EHA required a state administrative hearing at which parents could receive tuition reimbursement as appropriate relief for violations of the Act. S1 v. Spangler, 650 F.Supp. 1427 (M.D.N.C.1986). On the same day, the district court issued an order directing the City Board and its administrative hearing officer to conduct a hearing on the parents' claim for reimbursement, enter findings of fact and conclusions, and, if appropriate, award reimbursement; and enjoining Spangler and the State Board from further interpreting North Carolina law in a manner inconsistent with the court's interpretation of the EHA. Spangler, the State Board, the City Board, and the administrative hearing officer here appeal the district court's decision.
 
 
 7
 On September 24, 1987, while this appeal was pending, the parents and the City Board agreed to a partial settlement of the case. Under the terms of this settlement agreement, which the district court approved by order entered the same day, the parents agreed to a voluntary dismissal with prejudice of all their claims against the City Board, in return for the City Board's agreement to pay their accrued tuition expenses. The State Board and its Chairman were not parties to the settlement agreement, and the parents did not dismiss any of their claims against them. In light of this change in circumstances, we hold that this appeal is now moot.II
 
 
 8
 Because the question of mootness implicates our jurisdiction over this appeal, we are obligated to consider it as a preliminary matter even though neither party asserts mootness. St. Paul Fire & Marine Insurance Co. v. Barry, 438 U.S. 531, 537, 98 S.Ct. 2923, 2927, 57 L.Ed.2d 932 (1978). Without doubt, the complete settlement of the underlying dispute between the parents and the City Board has mooted the appeal as between those parties. See Lake Coal Co. v. Roberts & Schaefer Co., 474 U.S. 120, 106 S.Ct. 553, 88 L.Ed.2d 418 (1985). The settlement's impact on the parents' action against the State Board and its Chairman, however, is a more difficult question. But we need not decide whether this development moots the case in strict constitutional case or controversy terms, because we conclude that we should treat this appeal as moot for prudential reasons. See United States v. (Under Seal), 757 F.2d 600 (4th Cir.1985).
 
 
 9
 The discretionary power to withhold injunctive and declaratory relief for prudential reasons, even in a case not constitutionally moot, is well established. See United States v. W.T. Grant, 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); A.L. Mechling Barge Lines, Inc. v. United States, 368 U.S. 324, 82 S.Ct. 337, 7 L.Ed.2d 317 (1961). See generally 13A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure: Jurisdiction (2d ed. 1984 & Supp.1987) Sec. 3533.1. The prudential concerns that lead us to withhold such relief here are threefold.
 
 
 10
 First, and most fundamentally, we think the specific relief sought here no longer has sufficient utility to justify decision of this case on the merits. The parents do not seek monetary relief from the State Board and Spangler, but simply injunctive and declaratory relief against their promulgation and enforcement of rules forbidding state hearing officers to decide tuition reimbursement claims. As their pleadings make clear, the parents seek this relief only as an alternative to their reimbursement, by the City Board, for past tuition expenses. They have now obtained this reimbursement--which is indeed the ultimate object of their action for injunctive and declaratory relief against the State Board and Spangler--through settlement with the City Board. They therefore have no present need for remedial relief from the federal courts.[1]
 
 
 11
 To be sure, the settlement has not completely eliminated the possibility that the State Board and its Chairman may, if confronted with another tuition reimbursement claim from these particular parents, again prevent administrative determination of their claims. As the City Board has now placed their children in appropriate programs within the public school system, however, we do not think that possibility sufficiently realistic to justify the issuance of an injunction against future procedural violations were a violation of claimed right found. See W.T. Grant, 345 U.S. at 633, 73 S.Ct. at 897 (to obtain prospective injunctive relief, a party must convince the court that there is some "cognizable danger" of recurrent violations, more than the "mere possibility" that suffices to keep the case alive for constitutional purposes). Nor do we believe that concern for the rights of other parents could, in any event, justify the broad injunctive and declaratory relief sought here, for this action was neither filed nor certified as a class action. See, e.g., Inmates v. Owens, 561 F.2d 560, 562 (4th Cir.1977); see also Wilson v. Nevada, 666 F.2d 378, 381-83 & n. 5 (9th Cir.1982).[2] There is also at least a question of the parents' standing to seek injunctive and declaratory relief at this juncture. See City of Los Angeles v. Lyons, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). See generally 13A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure, Jurisdiction Sec. 3533.1, at 219-22; id. Sec. 3533.3 at 271 & n. 20.
 
 
 12
 Second, the difficulty and sensitivity of the constitutional issue at the core of this controversy persuades us that it would be imprudent to address the merits of this appeal now that the basic claim for monetary relief has been settled. See Kremens v. Bartley, 431 U.S. 119, 133-34 & n. 15, 97 S.Ct. 1709, 1717-18, n. 15, 52 L.Ed.2d 184 (1977); United States v. (Under Seal), 757 F.2d at 604. That issue involves the power of the federal courts, acting within the constraints of the eleventh amendment, to interfere by injunction with the internal process of a state administrative agency. Its difficulty is vividly illustrated by comparing David D. v. Dartmouth School Committee, 775 F.2d 411, 420-22 (1st Cir.1985) (Congress in enacting EHA exercised its power to abrogate the states' eleventh amendment immunity) with Gary A. v. New Trier High School District No. 203, 796 F.2d 940, 944 (7th Cir.1986) (EHA does not abrogate the states' eleventh amendment immunity), and by considering the general complexity of the doctrine emanating from Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) and Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).
 
 
 13
 Finally, we do not believe that the issues raised in this appeal require immediate resolution because they are capable of repetition yet likely to evade review. Our conclusion is based in large part on a June 17, 1987 Letter Ruling, issued after submission of this appeal by the Office of Special Education and Rehabilitative Services (OSERS) of the United States Department of Education, which has supervisory authority over federal grant-in-aid monies issued to the states under the EHA. The Letter Ruling expressly endorses the holding of the district court in this action, that the EHA requires states to authorize their hearing officers both to decide parents' tuition reimbursement claims and to order reimbursement where the conditions of Burlington are satisfied. Given OSERS's specific disapproval of the State Board's current procedures, we doubt that the precise conduct allegedly violative of federal procedural rights will recur; instead, we would suppose that any remaining doubt about the propriety of the current North Carolina procedures will be resolved shortly without judicial interference. We assume, for the purposes of this analysis, that the State Board and its Chairman will comply in good faith with the OSERS Letter Ruling. See United States v. (Under Seal), 757 F.2d at 604. Even if the State Board should persist in its current course of conduct, by oversight or in deliberate disregard of the OSERS directive, or for any other reason, the issue of the legality of that conduct would be unlikely, however, to evade review, because many potential plaintiffs remain to challenge it.
 
 
 14
 Under these circumstances, we think prudence counsels against addressing the merits of this appeal. We therefore vacate the order of the district court and remand the action to that court with directions to make an appropriate determination as to whether and in what amounts attorney's fees should be recoverable against the state defendants[3] and to dismiss the remainder of the action as moot. See United States v. Munsingwear, 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950). This disposition of the action will, of course, leave unresolved all questions raised about the State Board and its Chairman's liability for violations of the parents' federal procedural rights, as well as all questions involving the appropriate remedy for those violations. See id. at 40-41, 71 S.Ct. at 107.
 
 
 15
 SO ORDERED.
 
 
 
 [1]
 The fact that the parents still assert a claim for costs and attorney's fees against the State Board and Spangler does not avert mootness of the underlying action on the merits. See United States v. Ford, 650 F.2d 1141, 1143 (9th Cir.1981), cert. denied, 455 U.S. 942, 102 S.Ct. 1437, 71 L.Ed.2d 654; Doe v. Marshall, 622 F.2d 118, 119-20 (5th Cir.1980), cert. denied, 451 U.S. 993, 101 S.Ct. 2336, 68 L.Ed.2d 855; Flesch v. Eastern Pennsylvania Psychiatric Institute, 472 F.Supp. 798, 802 (E.D.Pa.1979) ("Any other rule would largely nullify the mootness doctrine with respect to cases brought under the myriad federal statutes that authorize fee awards.")
 Neither does a determination of mootness of the action on the merits preclude an award of attorney's fees on remand. See Reiser v. Del Monte Properties Co., 605 F.2d 1135, 1140 (9th Cir.1979) (issue of entitlement to attorney fees is ancillary to underlying action on merits and survives mooting of that action). The issue is thereafter determinable under the court's continuing equitable jurisdiction, see id., and is most appropriately determined in the first instance by the district court on remand. See, e.g., Doe v. Marshall, 622 F.2d at 119.
 
 
 [2]
 This is not a case, such as Potts v. Flax, 313 F.2d 284 (5th Cir.1963), where class-wide relief would be necessary to afford full relief to any individual plaintiffs
 
 
 [3]
 By remanding we of course express no view on the parents' entitlement to costs and attorney's fees against the state defendants. That is for first instance determination by the district court