Victoria SMYTH, et al., Plaintiffs,

v.

Clarence H. CARTER, Defendant.

No. CIV.A. 5:96CV00089.

United States District Court, W.D. Virginia, Harrisonburg Division.

Feb. 4, 2000.

Steven Lloyd Myers, Virginia Poverty Law Center, Inc., Richmond, VA, Edward M. Wayland, Edward M. Wayland, North Garden, VA, for Plaintiffs.

James S. Gilmore, III, William Henry Hurd, Siran S. Faulders, Office of the Attorney General, Richmond, VA, for Defendant.

## MEMORANDUM OPINION

MICHAEL, Senior District Judge.

Plaintiffs Victoria Smyth, Patricia Montgomery, Angela Smyth (Victoria's child), and Casey Montgomery (Patricia's child) are recipients of Federal welfare block grant money known as Temporary Assistance to Needy Families ("TANF") (formerly Aid to Families with Dependant Children ("AFDC")) distributed by the Commonwealth of Virginia. The defendant is the Commissioner of the Virginia Department of Social Services ("VDSS"), sued in his official capacity as administrator of Virginia's welfare program. The

plaintiffs filed this action under 42 U.S.C. § 1983, challenging on equal protection and other grounds, the Commonwealth's policy requiring mothers seeking welfare to identify the fathers of their children.

Under the paternity identification requirement, a mother applying for aid under the TANF program is required to identify the children's father. The plaintiffs claim VDSS denied or reduced their benefits because the agency deemed them "noncooperative" based on their inability to provide the agency with the fathers' names. The plaintiffs allege their failure to provide VDSS with the required paternity information is justified because they do not know the identity of their children's father. As a result, an attestation to that effect should qualify as "cooperation" as it does under the Federal regulations. The court agreed with this analysis in granting a preliminary injunction by a Memorandum Opinion and Order dated June 25, 1996. *See Smyth v. Carter,* 168 F.R.D. 28 (W.D.Va.1996). Due to the preliminary injunction, the plaintiffs continued to receive TANF benefits from June 1996 to August 1998 when VDSS's original paternity identification policy was in effect.

Effective August 1, 1998, the defendant amended the paternity identification policy making its application prospective only. The policy is inapplicable to children born before May 1, 1996, so long as the mother attests to her lack of information regarding paternity under penalty of perjury. Both of the children in this case were born prior to that date.

In May 1998, Plaintiff Victoria Smyth requested her TANF case be closed. Subsequent to the filing of this lawsuit, but prior to leaving TANF, Smyth began receiving Social Security Disability ("SSI") benefits. Although persons who are eligible for SSI are not eligible to receive TANF benefits for themselves, they may receive benefits for their children until their eighteenth birthday. Thus, although

Smyth was eligible to continue receiving TANF benefits for Angela, she voluntarily left the program.[1]

The Commonwealth filed its Motion to Dismiss initially claiming the Smyth plaintiffs no longer have standing to sue because they voluntarily withdrew themselves from the TANF program. The Commonwealth further contends the case is moot regarding the remaining plaintiffs based on the amended policy making its application prospectively only. In the alternative, the Commonwealth argues the case should be dismissed because neither declaratory nor injunctive relief is necessary to restore benefits to the plaintiffs. The Commonwealth notes that no "cognizable danger" exists to show it will revert to its prior policy. Further, the Commonwealth alleges that it waived its right to repayment of back benefits, and thus, it will not attempt to recover those benefits from the plaintiffs.

The plaintiffs acknowledge that the case is moot for prudential reasons, but request the court to recognize an agreement between the parties in which the plaintiffs allegedly agreed to continue the summary judgment hearing so that the defendant could revise the policy, in return for a waiver from the defendant to seek repayment of past benefits paid to the plaintiffs. The plaintiffs contend if the agreement is not in the dismissal order then the court would have to decide whether the defendant's policy was unlawful.

## I.

Absent a ruling by the court on the merits or an agreement of the parties, the defendant has an obligation to seek repayment of the benefits paid prior to August 1998 from the plaintiffs if they are deemed ineligible to receive those benefits. *See* Va.Code. Ann. § 63.1–86.1 (West, WESTLAW through 1999 Reg. Sess.) (replacing AFDC with TANF); 45 C.F.R.

---

**1.** Angela was 13 years old when the lawsuit was initially filed in 1995. Thus, in 1998, when her mother voluntarily left the program,

Angela would have been 16 years of age. As such, she could have received benefits for approximately two more years.

§ 233.20(a)(13) (1998) (requiring state programs to take reasonable steps to correct overpayment of benefits). The parties disagree about whether the defendant waived his right to seek repayment of the TANF benefits paid during this period or whether the parties entered into an agreement that the Commonwealth would not seek repayment in exchange for a non-contested continuance of the summary judgment hearing to be held September 12, 1997.

The defendant claims the Commonwealth waived its right to payments made before February 1, 1997 in its Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment, dated May 23, 1997. The Commonwealth did note in footnote 19 of the thirty-nine page brief that it no longer intended to occupy the court's time contesting the legality of the absolute paternity identification policy prior to the time Virginia received a waiver from the United States Secretary of Health & Human Services permitting the Commonwealth to have a more rigorous definition of "cooperation" than the federal law. Thus, the defendant declined to seek repayment prior to February, 1997. Moreover, supposedly in a letter to plaintiffs' counsel dated September 12, 1997, counsel for the defendant stated the Commonwealth would not seek repayment of TANF funds paid to the plaintiffs between February 1, 1997, and the date of a rescheduled final hearing on the merits. In the Defendant's Memorandum in Support of the Commonwealth's Motion to Dismiss, the Commonwealth extends its initial waiver of May 23, 1997, allegedly without agreement from the plaintiffs and without any return of consideration, to run through August 1, 1998, the date the policy was changed.

The plaintiffs contend the parties entered into an agreement on September 11, 1997, the day before the summary judgment hearing was to be held. Allegedly, the defendant's counsel approached the plaintiffs' counsel and requested the parties agree to a continuance to allow the defendant time to revise the policy. The defense counsel allegedly offered that if the plaintiffs agreed to the continuance, the defendant would continue to pay all benefits as required by the preliminary injunction order until a new hearing could be scheduled. Further, the defendant would waive any claim to repayment of these benefits even if he ultimately prevailed on the merits. The plaintiffs request that the final dismissal order in this case clarify the defendant was, and still is, bound by this agreement.

At a status conference before this court held on April 15, 1999, the defendant represented to the court that it waived the collection of back benefits for the period before February, 1997 in a memorandum to the court. Indeed, the court finds that the defendant did make this initial waiver. However, there appears to be a second waiver resulting from the parties' agreement to continue the summary judgment hearing. The defendant informed the court, "We agreed to a continuance on the motion. And at that point the department agreed to waive repayment from February 1, 1997 until the date of the rescheduled hearing. So, again, that was the result of an agreement." The court proceeded to ask the defendant whether the two waivers waived any claim the department had to recoup those payments. The defendant responded, "Yes ... we don't make any further assertion for those benefits or to those claims. And that was, again, a result of our agreement to waive."

In reviewing the transcript, the defendant was not troubled by the admission that the parties previously reached an agreement, but was concerned with the court ordering the parties not to seek such benefits. Indeed, the defendant asserted that "with regard to the waiver it is something that the parties agreed to without any order of the court or without any direction from the court," and further proposed that the order state "in conjunction with the parties agreement, the defendant waives any right to seek repayment." Towards the end of the status conference, the defendant again admitted "the department

has no intention of collecting back benefits as a result of the agreement that the lawyers made on behalf of their respective clients." When the court asked whether there was anything wrong with reciting that in the order, the following exchange occurred:

Ms. Faulders: Your Honor, if the language reflects it appearing that the parties have done the following and states the facts and reflects what in fact we did -

The Court: That you agreed.

Ms. Faulders: That we agreed that we would not seek back benefits.

The Court: That both sides agreed.

Ms. Faulders: Yes, sir.

Based upon the admissions made to the court during the status conference, this court finds that the parties did enter into an agreement where the defendant would receive a non-contested continuance in return for a waiver of seeking benefits paid to the plaintiffs between February, 1997 and the date the policy was revised to exclude the plaintiffs. Accordingly, the dismissal order will declare that the defendant is unable to seek repayment of TANF benefits because of the binding agreement between the parties.

## II.

■ Article III of the Constitution limits federal courts' jurisdiction to "actual, ongoing cases or controversies." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990) (citing *Deakins v. Monaghan*, 484 U.S. 193, 199, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988); *Preiser v. Newkirk*, 422 U.S. 395, 401, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975)). These controversies must be "live" controversies, "those that persist in 'definite and concrete' form even after intervening events have made some changes in the parties' circumstances." *Mosley v. Hairston*, 920 F.2d 409, 414 (6th Cir.1990) (citing *DeFunis v. Odegaard*, 416 U.S. 312, 317, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974)). However, a court need not determine whether a case is moot on constitutional grounds or controversy terms if the case is treated as moot for prudential reasons. *See S-1 and S-2 v. Spangler*, 832 F.2d 294, 296 (4th Cir.1987) (hereinafter "*Spangler*").

In *United States v. Under Seal*, 757 F.2d 600 (1985), the Fourth Circuit initially recognized that it could avoid the determination of whether a case has become moot in constitutional case or controversy terms, and instead, treat the case moot for prudential reasons. *See id.* at 602. As authority for this undertaking, the court cited Federal Practice and Procedure by Wright, Miller and Cooper [hereinafter "FP & P"]. *See id.* In FP & P, constitutional concepts of mootness are recognized as the major foundation of the current doctrine. Accordingly, a review of the Article III threshold question of "case and controversy" is recommended before determining whether a case is moot for discretionary reasons of remedy or judicial administration. *See* 13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3533.1, at 214–15 (2d ed.1984). However, the authors realize that courts frequently do not draw clear lines between constitutional and prudential doctrines when determining whether a case is moot. *See id.* at 226. Moreover, they question why reliance is placed upon constitutional mootness when the doctrine is as flexible as it is and "the ordinary needs can be met by the discretionary doctrines." *Id.* at 215.

■ Indeed, the Fourth Circuit does not command a district court to perform the rigorous analysis of constitutional mootness if the case can be deemed moot for prudential reasons. *See Under Seal*, 757 F.2d at 602; *S-1 and S-2 v. Spangler*, 832 F.2d 294, 297 (4th Cir.1987), *appeal after remand* 6 F.3d 160 (4th Cir.1993), *rehearing en Banc, vacated on other grounds* 21 F.3d 49 (4th Cir.1994) (declaring "we need not decide whether this development moots the case in strict constitutional case or controversy terms, because we conclude that we should treat this appeal as moot

for prudential reasons"). The Fourth Circuit recognized several factors to consider when deciding whether a case is prudentially moot: (1) the court's inability to give an effective remedy because of developed circumstances; (2) the sensitivity and/or difficulty of the dispositive issue; and (3) the likelihood that the challenged act would recur and evade review. *See Under Seal*, 757 F.2d at 603; *Spangler*, 832 F.2d at 297–98.

█ The case at bar satisfies the three factors. First, because the plaintiffs continued to receive TANF benefits under the preliminary injunction order, they received all of the benefits they are entitled to. Thus, the court should not award any monetary damages. Further, with the paternity identification policy's amendment making it apply prospectively only, the plaintiffs are now exempt from the challenged act. Because the plaintiffs represent only themselves in this suit and not a class of women unable to identify the father of their children, an injunction would be improper in this case. Realizing this, the plaintiffs no longer seek this relief. Second, as the *Spangler* court noted, a sensitive and difficult issue arises when a court is called upon to interfere with a state administrative agency by enjoining one of the agency's policies. *See Spangler*, 832 F.2d at 298. Because the plaintiffs already received what they ultimately sought—to continue receiving benefits—it would be imprudent for the court to address the legality of the identification policy. Lastly, in both briefs submitted to this court as well as argument before it, the defendant promised not to rescind the amendment and not to seek repayment of the benefits received by the plaintiffs during the period the policy applied to them. Thus, the possibility of recurrence is unlikely. However, even if the challenged act recurred, the act would not evade review. Situations evading review include an abortion claim or a claim challenging a ten-day restraining order. *See Native Village of Noatak v. Blatchford*, 38 F.3d 1505, 1510 (9th Cir.1994). In both illustrations the judicial process generally exceeds the time-frame of the challenged act. The present case does not produce any such time frame for the court to try such an issue. Thus, because the case at bar satisfies all three factors, combined with the fact that both parties agree the case is moot, this court finds that the case is moot for prudential reasons, and thus, elects not to address the issue of constitutional mootness.

### III.

Both of the parties agree that the plaintiffs can no longer seek declaratory or injunctive relief. This assertion is the result of the change in the paternity identification policy making it apply prospectively only and the agreement between the parties that the defendant will not seek back payments awarded to the plaintiffs. For the foregoing reasons, this case is dismissed with prejudice as it is moot for prudential reasons. However, the court retains jurisdiction of the case to decide the issue of attorneys' fees.

An appropriate order this day shall issue.

### *ORDER*

Pending before the court is the defendant's Motion to Dismiss filed on May 6, 1999. The defendant contends this case is moot and that the plaintiffs lack standing to pursue their claims. Accordingly, he requests this court to dismiss the case pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. On August 24, 1999, this court heard oral arguments on the defendant's motion.

The court finds, that effective August 1, 1998, the defendant revised the paternity identification policy that was the subject of this litigation by making is application prospective only. As a result, the plaintiffs are no longer disqualified from receiving benefits under the Temporary Assistance to Needy Families Act ("TANF") as a result of their inability to name the fathers of their children who are parties to this case.

The court further finds that the defendant may not seek repayment of TANF benefits paid to the plaintiffs under the prior policy. The defendant, in his Memorandum in Opposition to the Plaintiff's Motion for Summary Judgment, made an initial waiver of the repayment of TANF benefits paid before February 1, 1997. By agreement of the parties and in exchange for a continuation of the summary judgment hearing, the defendant extended that waiver so as to include all TANF benefits paid through August 1, 1998, at which time the revised paternity identification policy went into effect. Accordingly, it is this day

## ADJUDGED AND ORDERED

that:

(1) the court finds that this case is MOOT FOR PRUDENTIAL REASONS and that the court lacks jurisdiction over this matter;

(2) the court GRANTS the defendant's Motion to Dismiss and DISMISSES this case WITH PREJUDICE;

(3) the court DISMISSES the plaintiff's Motion for Summary Judgment filed July 31, 1996 as MOOT;

(4) the court reserves jurisdiction to decide (a) whether the plaintiffs are entitled to any award of attorneys' fees and costs in this case, and (b) if they are so entitled, the amount of any such award;

(5) the plaintiffs shall have thirty (30) days from the entry of this Order to file their Petition for Attorney's Fees;

(6) the defendant shall have thirty (30) days from service of such petition to files his Memorandum in Opposition; and

(7) the plaintiff shall then have fifteen (15) days from service of such Memorandum in Opposition to file their Reply Memorandum.

The Clerk of the Court is hereby directed to send a certified copy of this Order to all counsel of record.