**Shane FELDMAN, et al., Plaintiffs,**

v.

**PRO FOOTBALL, INC., et al., Defendants.**

**Civil Action No. AW–06–2266.**

United States District Court, D. Maryland, Southern Division.

March 30, 2008.

Joseph B. Espo, Brown Goldstein and Levy LLP, Baltimore, MD, Marc P. Charmatz, Rosaline Hayes Crawford, National Association of the Deaf, Silver Spring, MD, for Plaintiffs.

Brigida Benitez, Danielle Yvette Conley, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, DC, for Defendants.

## MEMORANDUM OPINION

ALEXANDER WILLIAMS, JR., District Judge.

Plaintiffs bring this action against Defendants for violations of Title III of the Americans with Disabilities Act ("ADA"). Currently pending before the Court are Defendants' Motion for Summary Judgment; Plaintiffs' Cross Motion for Summary Judgment; and Plaintiffs' Motion for Leave to File Surreply. The Court has reviewed the entire record, as well as the pleadings and exhibits, with respect to the instant motions. On September 29, 2008, the Court conducted a hearing on the pending motions. *See* Local Rule 105.6 (D. Md. 2008). For the reasons stated more fully below, the Court will DENY Defendants' Motion for Summary Judgment; GRANT–IN–PART and DENY–IN–PART Plaintiffs' Cross Motion for Summary Judgment; and DENY Plaintiffs' Motion for Leave to File Surreply.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are deaf and hard of hearing individuals who are fans of the Washington Redskins football team and have attended a varying number of Redskins home games since the team began playing at FedExField. Plaintiffs plan to attend future Redskins home games.

Defendant Pro Football, Inc. ("PFI") is a Maryland Corporation that owns and operates the Redskins. Defendant WFI Stadium, Inc. ("WFI") is a Delaware Corporation that owns and operates FedEx-Field. WFI leases FedExField to PFI for the playing of Redskins home games. Since September 1997, the Redskins have played their home games at FedExField, which seats approximately 91,000 people and is located in Landover, Maryland.

On August 31, 2006, Plaintiffs filed this suit against Defendants alleging violations of Title III of the Americans with Disabilities Act ("ADA"). Plaintiffs argue that Defendants do not provide deaf and hard of hearing fans equal access to the information and announcements broadcast over FedExField's public address system. In particular, Plaintiffs assert that Defendants have refused to provide auxiliary aids and services (specifically captioning) to ensure that announcements made over the public address system are effectively communicated to deaf and hard of hearing fans. Plaintiffs' claim that auxiliary aids and services should be available in two areas of FedExField: the stadium bowl and the stadium concourse levels.

Prior to the 2006 football season, with limited exception, FedExField did not caption any announcements made over the stadium's public address system. The Redskins have always offered assisted listening devices to hard of hearing fans who request one. However, Plaintiffs do not benefit from assistive listening devices.

In 2002, Plaintiff Paul Singleton ("Singleton") requested that the Redskins move his seats closer to the scoreboard. The Redskins complied with Singleton's request. On June 18, 2003, Plaintiff Shane Feldman ("Feldman") sent an email to Todd Boyan of the Redskins requesting that the Redskins caption the stadium's public address system announcements on the Sony JumboTrons [1] ("JumboTron") located in each end zone at FedExField. Feldman explained that captioning would help him understand referee calls, plays during the game, and emergency announcements, such as the announcements

---

1. A JumboTron is a large-screen television used to display video in sports venues.

made at FedExField during a pepper spray incident in the 2002 football season. Feldman exchanged further emails with Redskins personnel during 2003 and 2004. In those emails, Feldman and the Redskins discussed captioning on the Jumbo-Trons and a handheld captioning system known as Colorado Captioning. On February 22, 2006, the National Association of the Deaf sent a letter to Daniel Snyder, the Redskins' owner, requesting that "all of the announcements made over the public address system at FedExField be made accessible by captioning in compliance with Title III" of the ADA. Emails and documents reflect that, from 2003 until the filing of the present action, the Redskins contemplated several solutions to accommodate deaf and hard of hearing fans.

Plaintiffs filed the present suit on August 31, 2006 and served Defendants on September 6, 2006. The Redskins first home game of that season was on September 11, 2006. At that time, other than open captioning [2] of an emergency evacuation video on the JumboTrons, Defendants still did not caption any of the material requested by the Plaintiffs. On October 15, 2006, FedExField began captioning certain aural content. Defendants have provided the majority of the below listed captioning at every home game since October 15, 2006. Defendants state that they intend to continue providing these captioning services indefinitely. Plaintiffs contest this intention and argue that these captioning services can be shut off with the "flip of a switch."

**2.** Open captioning appears on the video itself and cannot be turned off.

**3.** It cost Defendants approximately $5000 to install the LED captioning technology.

**4.** In 2007, Defendants paid approximately $550 a game for the stenographer.

**5.** The only seats with obstructed views of the LED boards are located in the upper rows of

### Stadium Bowl

FedExField uses a public address system to make announcements in the stadium bowl before, during, and after each home game.

FedExField has a JumboTron in each end zone. Several other scoreboards are located next to each JumboTron. During games, the JumboTrons display live action video, replays, advertisements, public service announcements, an emergency evacuation video, and emergency text messages. Cameras in the stadium capture the live action video and replays displayed on the JumboTrons (hereinafter, "JumboTron video feed"). As discussed in more detail below, half of the televisions on the concourse levels of the stadium display the JumboTron video feed.

FedExField also has two light-emitting diode ribbon boards ("LED ribbon boards") located midway between the upper and lower seating decks on each side of the stadium at the 50 yard line. Most public address system announcements are now closed captioned on the LED ribbon boards.[3] A stenographer captions the material that appears on the LED ribbon boards.[4] The LED ribbon boards can be seen from almost every seat in the stadium.[5]

### Aural Content that is Currently Captioned in the Stadium Bowl

- Shortly before each game begins, an announcement encourages the fans to cheer for the team. (Captioned on the LED ribbon boards)

a portion of lower level on visitor's side of stadium. Plaintiffs do not sit in the obstructed view seats. Indeed, Plaintiffs admit that they can see the LED ribbon boards from their seats. Defendants state that their policy is to relocate a deaf or hard of hearing person from the obstructed view seats if requested. Plaintiffs have presented no evidence to contradict that policy.

- Prior to the game, an emergency evacuation video with audio is shown on the JumboTrons. (Open captioned on the JumboTrons)
- After each play during the game, an announcement states the type of play, names of the key players involved in the play, the number of yards gained or lost, the yard line at which the ball was spotted after the play, and the number of yards remaining until first down.[6] (Captioned on the LED ribbon boards)
- The public address system also informs the crowd of the two minute warning and when each quarter has ended. (Captioned on the LED ribbon boards)
- During the game, the referee explains penalties over the public address system and uses hand signals to identify penalties.[7] (Captioned on the LED ribbon boards)
- When cheerleaders take the field during halftime and breaks in game play, they are announced over the public address system. (Captioned on the LED ribbon boards)
- Announcements regarding check presentations and other non-musical entertainment are broadcast over the public address system during breaks and halftime. (Captioned on the LED ribbon boards)
- The public address system broadcasts advertisements and public service announcements, which occasionally have accompanying video displayed on the JumboTrons. (Captioned on the LED ribbon boards or open captioned on the JumboTrons)
- On occasion, the public address system broadcasts the scores of other football games. (Captioned on the LED ribbon boards)
- After each game, the public address system announces that the game is over; informs the crowd of the final score; and states the date, time, and opponent for the next home game. (Captioned on the LED ribbon boards)
- In the event of emergency, the public address system can be used to provide necessary information to the crowd.[8] (Captioned on the LED ribbon boards)

*Aural Content that is Not Currently Captioned in the Stadium Bowl*

- During halftime and breaks in game play, music with lyrics is occasionally broadcast over the public address system. This music includes musical performances and music played during other entertainment routines. With the exception of the Star Spangled Banner and Hail to the Redskins,[9] music with lyrics is not captioned at FedExField.

6. Information regarding the down, yard line, distance to first down, two-minute warning, end of quarter, and end of game is also posted on the scoreboards located next to the JumboTrons.

7. In addition, the cameras that feed the JumboTron zoom in on the referee when he makes hand signals. However, the referee does not sign the numbers of the players involved in the penalty.

8. The Redskins also have a prepared set of text messages that can be displayed on the JumboTrons during emergencies. When emergency text messages appear on the JumboTrons, they also appear on the 50% of the televisions on the concourse level that display the JumboTron video feed.

9. The Star Spangled Banner and Hail to the Redskins have been open captioned on the JumboTrons since before the filing of this lawsuit.

### Concourse Levels

*Captioning Provided in the Concourse Levels*

The concourses levels of the stadium contain approximately 150 televisions. Half of these televisions display the JumboTron video feed. The other half of these televisions are marked with a green dot. Stadium staff are directed to ensure that, on game day, any television monitor with a green dot is both closed captioned enabled and tuned to the network broadcast of the Redskins game. Concessionaires are directed not to change any settings on the green dot television monitors. This practice allows deaf and hard of hearing fans access to play-by-play coverage of the game while they are away from their seats.

*Aural Content that is Not Captioned in the Concourse Levels*

A local radio station, "Red Zebra," is broadcast in the concourse area of the stadium. Local commentators Sonny Jurgenson and Sam Huff, and Redskins vice president Larry Michael, provide play-by-play commentary on Red Zebra. FedEx-Field does not caption the Red Zebra broadcast.

### Procedural History

Plaintiffs filed this action on August 31, 2006. Following nearly a year of failed settlement discussions, Defendants filed an Answer on August 15, 2007. Following the close of discovery, the parties filed the motions at issue. Currently pending before the Court are Defendants' Motion for Summary Judgment, Plaintiffs' Cross Motion for Summary Judgment, and Plaintiffs' Motion for Leave to File Surreply.

### STANDARD OF REVIEW

Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). When parties file cross motions for summary judgment, the court must view each motion in a light most favorable to the non-movant. *Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir.2003). To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). While the evidence of the nonmoving party is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330–31 (4th Cir.1998). Additionally, hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. *See Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

### ANALYSIS

Defendants' Motion for Summary Judgment raises three arguments: (1) that Plaintiffs lack standing to bring this case; (2) that Defendants' actions after commencement of this suit rendered the case

moot; and (3) that the ADA does not require Defendants to provide captioning or other auxiliary aids and services to ensure that aural information broadcast at FedExField is effectively communicated to deaf and hard of hearing fans.

Plaintiffs argue that they are entitled to summary judgment because: (1) Defendants have not made FedExField fully accessible to deaf and hard of hearing fans; and (2) Defendants have refused to acknowledge that Title III of the ADA requires them to caption any aural material broadcast over FedExField's public address system.

Before turning to these arguments, however, the Court must address a dispute regarding the scope of the Complaint.

## I. *Scope of the Complaint*

In the Complaint, Plaintiffs alleged that Defendants "failed and refused ... to display captioning, provide captioning services or otherwise modify their equipment to provide equal access to deaf and hard of hearing fans to announcements made over the FedExField public address system." (Compl. ¶ 2). Plaintiffs' Complaint specifically demands captioning of play and penalty information, emergency and safety information, and other announcements made before, during, and after the games. As discussed above, Defendants began captioning the majority of the announcements

broadcast over the stadium bowl public address system on the LED ribbon boards on October 15, 2006, a fact that Defendants rely on in their Motion for Summary Judgment. In their Opposition Brief, Plaintiffs argue: (1) that Defendants still do not caption music with lyrics heard over the public address system ("music captioning"); (2) that Defendants still do not caption the Red Zebra broadcast in the stadium concourse levels ("Red Zebra captioning"); and (3) that the LED ribbon boards do not communicate effectively because they are not in the line of sight of the JumboTrons ("line of sight issues").[10] In their Reply, Defendants argue that these allegations are new and were not pleaded in the Complaint. Plaintiffs argue that the Complaint is broad enough to include these issues, and that Defendants had a chance to fairly litigate these issues and will not be prejudiced by continuing to litigate them.

"Rule 8(a)(2) requires that a complaint include only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). "'[T]he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim.'" *Id.* "The purpose of the 'short and plain state-

---

**10.** The line of sight issues are better understood as follows. Plaintiffs argue that Defendants should: (1) caption on the JumboTrons; or (2) move the LED ribbon boards closer to the JumboTrons. Plaintiffs argue that the current locations of the JumboTrons make it difficult to both watch replays or other video on the JumboTrons and read the captioning on the LED ribbon boards. Plaintiffs assert that, while the public address system may not narrate the replays, occasionally video is played on the JumboTron while announcements are being made. Defendants argue that any announcements on the public address system do not narrate instant replays

and thus Plaintiffs are not missing anything. Moreover, Defendants claim that captioning on the JumboTrons themselves is not feasible because doing so would consume approximately one third of the JumboTron's screen. Defendants argue that this would limit the enjoyment of other fans and would reduce the JumboTron's technical capabilities by 50%. Plaintiffs do not provide evidence to contest Defendants' "one third of the screen" or "50% reduction in technical capability" claims, but Plaintiffs do contest the claim that displaying captioning on the JumboTrons would limit the enjoyment of other fans.

ment' is to give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." *MedImmune, Inc. v. Centocor, Inc.,* 271 F.Supp.2d 762, 771 (D.Md.2003). " 'This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims.' " *Id.*

At the time Plaintiffs filed the Complaint, Defendants provided no captioning at FedExField. Defendants began captioning on the LED ribbon boards after the Complaint was filed. Defendants argue that Plaintiffs' line of sight issue is new and was not raised in the Complaint. Plaintiffs' Complaint requested captioning *on* the JumboTrons. This request subsumes Plaintiffs' need and desire to watch the JumboTrons while reading captioned information. Plaintiffs could not anticipate Defendants' measured response to their request in the Complaint. Moreover, the Complaint states that: "Defendants have refused to provide auxiliary aids and services (captioning) to individuals who are deaf or hard of hearing to ensure *effective communication* with and equal access to the information and announcements made over the public address system." (Compl. ¶ 58) (emphasis added). This language makes it clear that Plaintiffs are not only asking for captioning; they want captioning that effectively communicates. The line of sight issue is an issue of whether communication is effective, and thus the line of sight issue is properly within the scope of the Complaint.

With respect to music captioning, Plaintiffs' prayer for relief requests an injunction demanding that Defendants "immediately cease their discrimination and provide individuals with disabilities equal access to the *benefits of the facility, programs, services, and activities* of the Defendants." (emphasis added). In addition, the Complaint states that: "De-fendants have refused to provide auxiliary aids ... to ensure ... equal access to the *information and announcements made over the public address system.*" (Compl. ¶ 58) (emphasis added). The music broadcast over FedExField's stadium bowl public address system is "information" or an "announcement." Moreover, music is a "program, service, or activity" provided by Defendants that hearing fans can access but deaf and hard of hearing fans cannot. Thus, the Court finds that the Complaint covers Plaintiffs' demand for music captioning.

Red Zebra captioning is harder to construe as being covered by the Complaint. For example, the Complaint states: "[T]he video monitors located in the concession areas ... do not display captioning for *announcements made over the public address system.*" (Compl. ¶ 26) (emphasis added). In the Complaint, Plaintiffs uses the term "public address system" when discussing aural information available in the stadium bowl. In addition, Plaintiffs' emails with the Redskins leading up to this lawsuit demanded captioning of play, referee, safety/emergency information, and other announcements made over the public address system in the stadium bowl. The Complaint does not mention radio broadcasts at all. Plaintiffs could have amended the Complaint to include Red Zebra captioning. As Plaintiff did not amend its Complaint, the Court finds that Plaintiffs cannot seek or oppose summary judgment on the basis of issues related to Red Zebra captioning.

Having determined that the Complaint covers Plaintiffs' claims for line of sight issues and music captioning, but not Red Zebra captioning, the Court turns to the parties' substantive arguments.

## II. *Standing*

Defendants argue that Plaintiffs lack standing because: (1) Plaintiffs cannot es-

tablish an injury in fact because the alleged discrimination is no longer occurring and because there is no real and immediate threat that they will be discriminated against by Defendants in the future; and (2) Plaintiffs' allegations of prior injury cannot be redressed by this Court's grant of injunctive or declaratory relief because Defendants' actions have remedied any prior injury.

Plaintiffs argue that standing is judged at the time a lawsuit is commenced and, thus, the captioning provided by Defendants after this action began should not be considered for standing purposes. Plaintiffs then assert that they had suffered injury in fact at the time of commencement of this lawsuit because they had previously attended many Redskins games and planned to attend future games, and because Defendants did not provide any captioning of, or equal access to, the aural information available at games. Finally, Plaintiffs argue that, regardless of the subsequent captioning provided by Defendants, Plaintiffs still suffer injury because of the line of sight issues and lack of music captioning.

"[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Standing is "[t]he requisite personal interest that must exist at the commencement of the litigation." *Friends of the Earth, Inc. v. Laidlaw Environ. Servs. (TOC), Inc.*, 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). *See also Johnson v. Bd. of Regents of the Univ. of Georgia*, 263 F.3d 1234, 1267 (11th Cir. 2001) ("[S]tanding to sue is generally measured at the time of the Complaint, with the effects of subsequent events generally analyzed under mootness principles."); *Equal Access Educ. v. Merten*, 325 F.Supp.2d 655, 667 (E.D.Va.2004) ("It is

clear that standing must exist at the time suit is filed."); *Richmond Medical Center for Women v. Gilmore*, 55 F.Supp.2d 441, 472 (E.D.Va.1999) (noting that actions taken after commencement "do not affect the standing inquiry at all because standing is measured at the time the action is filed.").

To establish standing, Plaintiffs must show that: (1) they "suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) "there [is] a casual connection between the injury and the conduct complained of"; and (3) "it [is] likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61, 112 S.Ct. 2130 (citations and internal quotation marks omitted). "The party invoking federal jurisdiction has the burden of establishing these elements." *Id.* at 561, 112 S.Ct. 2130.

■ When Plaintiffs filed the present suit, they were clearly suffering an injury in fact. Plaintiffs did not have access to any of the aural content available to hearing Redskins fans at FedExField. Moreover, Plaintiffs were likely to suffer harm in the future, as they planned to attend future Redskins games. Defendants caused this harm, and declaratory or injunctive relief by this Court would have redressed Plaintiffs' injury.

In addition, Plaintiffs certainly have standing to litigate the issues regarding music captioning and line of sight issues. At the time of the Complaint, Plaintiffs suffered injuries because they did not have access to music captioning and because information allegedly was not being effectively communicated to them. Defendants' actions clearly caused these injuries, and injunctive or declaratory relief by this Court would redress Plaintiffs' injuries.

As such, Plaintiffs had standing to file this action.

### III. *Mootness*

A court can determine that a case is moot on two grounds: (1) constitutional mootness, or (2) prudential mootness. *See, e.g., United States v. Under Seal,* 757 F.2d 600, 603 (4th Cir.1985). Constitutional mootness dictates that " 'Federal courts have no jurisdiction to decide moot cases because of the case or controversy requirement of Article III of the Constitution.' " *Baltimore Neighborhoods, Inc. v. LOB, Inc.,* 92 F.Supp.2d 456, 461 (D.Md.2000). The doctrine of prudential mootness allows a court to determine that, regardless of constitutional mootness, a case is moot because the court cannot provide an effective remedy and because it would be imprudent for the court to hear the case. *Under Seal,* 757 F.2d at 603.

### A. *Constitutional Mootness*

Defendants argue that the captioning they began to provide on or after October 15, 2006 renders this case moot. Specifically, Defendants assert that FedExField now captions all announcements made over the stadium bowl public address system and play-by-play information on the televisions in the concourse areas of the stadium.

Plaintiffs argue that the case is not mooted by Defendants voluntary action in providing certain captioning services at FedExField. Specifically, Plaintiffs argue that "Defendants can, at the flip of a switch, instantly return to their illegal and discriminatory ways." Thus, Plaintiffs believe injunctive and declaratory relief are the only way to prevent future injury. In addition, Plaintiffs argue that music captioning and line of sight issues are still in dispute.

▇ "[W]hen the question sought to be adjudicated has been mooted by subse-quent developments," there is "no justiciable controversy" for a court to decide, and thus a case is deemed constitutionally moot. *Baltimore Neighborhoods,* 92 F.Supp.2d at 461. However, "[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. If it did, the courts would be compelled to leave the defendant ... free to return to his old ways." *Friends of the Earth,* 528 U.S. at 189, 120 S.Ct. 693 (citations and internal quotation marks omitted). " 'A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.' " *Id.* The party asserting mootness bears the burden of persuading the court that the challenged conduct will not recur. *Id.* "To meet this burden, the defendant must demonstrate (1) 'that there is no reasonable expectation that the alleged violation will recur,' and (2) that 'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.' " *Baltimore Neighborhoods,* 92 F.Supp.2d at 461.

▇ In considering Defendants' mootness argument, the Court struggled with what appears to have been reasonable efforts by Defendants to accommodate Plaintiffs' requests. Indeed, the vast majority of the issues initially raised by Plaintiffs have been resolved. The Court agrees with Plaintiffs, however, that there is nothing to prevent Defendants from returning to their prior practices. While there were correspondences, which included the threat to file suit, it is clear that Defendants provided captioning after being sued. Moreover, Defendants can simply stop enabling closed captioning on the concourse level video monitors or cease captioning on the LED ribbon boards; nothing in the record indicates that Defendants

actions have resulted in permanent changes. Thus, the Court finds that Defendants have not met their burden of showing that their voluntary actions mooted the case.

Regardless of the captioning Defendants currently provide, Plaintiffs' claim based on music captioning is still in dispute because Defendants have done nothing to provide Plaintiffs access to music available at the stadium. In addition, even though Defendants currently caption on the LED boards, Plaintiffs' line of sight argument is a challenge to whether the current captioning effectively communicates with Plaintiffs. As these issue are still disputed, the case is not constitutionally moot.

### B. *Prudential Mootness*

Defendants argue that, even if the case is not constitutionally moot, the Court should find that the case is prudentially moot because: (1) the court cannot issue an effective remedy, as Defendants have already captioned the material Plaintiffs requested; (2) whether the ADA requires a football stadium to caption aural information is an issue of first impression; and (3) it is highly unlikely that Plaintiffs will be subjected to the allegedly discriminatory conduct in the future.

To determine whether a case is prudentially moot, the Fourth Circuit evaluates three factors: "(1) the court's inability to give an effective remedy because of developed circumstances; (2) the sensitivity and/or difficulty of the dispositive issue; and (3) the likelihood that the challenged act would recur and evade review." *Smyth v. Carter*, 88 F.Supp.2d 567, 571 (W.D.Va.2000) (citing *Under Seal*, 757 F.2d at 603).

Cases that are found prudentially moot typically deal with sensitive and difficult constitutional questions. *See, e.g., S-1 v. Spangler*, 832 F.2d 294, 298 (4th Cir.1987) (federal court's power to enjoin a state agency); *Under Seal*, 757 F.2d at 604 (federal court's power to control grand jury investigations); *Smyth*, 88 F.Supp.2d at 571 (federal court's power to enjoin a state agency). The case currently before the Court addresses an ADA claim. Although Defendants may be correct that the issues before the Court are novel, these issues are certainly not so difficult and sensitive that the Court should refrain from hearing them.

Moreover, the Court has found that music captioning and line of sight issues are covered by Plaintiffs' Complaint. These alleged ADA violations continue today, and this Court has the power to effectively remedy them. Therefore, the Court finds that this case is not prudentially moot.[11]

### IV. *Title III of the ADA*

Defendants' remaining argument is that Title III of the ADA does not require them to provide deaf and hard of hearing fans any auxiliary services to ensure equal access to the aural information at FedEx-Field other than assistive listening devices, which have always been available at FedExField (even though they do not help Plaintiffs). As part of their argument that the ADA does not require what Plaintiffs posit, Defendants rely on what appears to be a supplement to the Department of Justice ("DOJ") ADA Technical Assistance Manual, which states: "When audible communications are integral to the use of the stadium, assistive listening systems are required for people who are hard of hearing." Defendants assert that they already

---

11. Because this case is not prudentially moot, it is unnecessary for the Court to consider Plaintiffs' Surreply. Therefore, Plaintiffs' Mo-

tion for Leave to File Surreply is DENIED. *See* Local Rule 105.2(a) (D. Md. 2008).

provide assistive listening devices and that those devices need only caption material that is integral to the use of the stadium. Defendants argue that all information that is integral to the use of the stadium can be gathered solely from watching the game. Defendants also claim that, even if they are required to provide auxiliary aids and services to guarantee access to aural information, nothing in the law dictates that they provide captioning as opposed to other auxiliary services.

Plaintiffs argue that they are entitled to summary judgment because Defendants have not provided deaf and hard of hearing fans with equal access to aural information broadcast at FedExField and because Defendants have refused to acknowledge that Title III of the ADA requires them to caption any aural material broadcast over FedExField's public address system. Plaintiffs specifically assert that Defendants must correct the line of sight issues and provide access to music broadcast over the public address system. Plaintiffs also seek a declaration that the ADA requires Defendants to caption the audio content currently captioned at FedExField.

Despite the fact that Plaintiffs repeatedly cite Title III of the ADA and the DOJ's implementing regulations, Defendants argue that Plaintiffs failed to cite any law or cases to support their position. Any plaintiff that presents a novel issue based on statutory or constitutional interpretation is likely to face similar arguments regarding a lack of interpretive case law. Nonetheless, courts hear those claims. Had courts chose to avoid hearing novel issues, legal landmarks such as *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1964), *Gideon v.*

*Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and *Brown v. Bd. of Educ.,* 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), would never have been decided. This Court need not dodge issues because they are novel.

One of the purposes of the ADA was to "provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(2). It appears that no court has addressed whether the ADA requires stadium owners or occupants to provide deaf and hard of hearing fans equal access to aural content provided in stadiums. There are hundreds of stadiums in the United States, and the number of disabled people who desire to enjoy professional sports is constantly increasing as the population grows. Thus, the question presented by Plaintiffs is of great importance to many people. More importantly, this question is of great importance to Plaintiffs themselves. While Defendants have gone a long way to provide captioning and some access to deaf and hard of hearing fans, Defendants, in effect, do not want to be told they are required to do so by Title III.

Title III of the ADA mandates that: "No individual shall be discriminated against on the basis of disability in the *full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations* of any place of public accommodation by any person who owns, leases, or operates a place of public accommodation." [12] 42 U.S.C. § 12182(a) (emphasis added). The Department of Justice ("DOJ") regulations that implement Title III state that: "A public accommodation shall take those steps that may be necessary to ensure that no individual with a

---

**12.** FedExField is clearly a public accommodation, *see* 42 U.S.C. § 12181(7)(C), that is owned, operated, or leased by Defendants.

disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absences of auxiliary aids and services." 28 C.F.R. § 36.303(a). The applicable regulations further state that: "A public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c) (emphasis added).

■ The Court is not persuaded by Defendants' argument that the law only requires them to provide assistive listening devices. Plaintiffs have represented, and Defendants do not disagree, that assistive listening devices are useless to these Plaintiffs. Thus, these devices cannot possibly ensure effective communication with Plaintiffs. The Court cannot ignore the broader mandates of the ADA and its implementing regulations.

The plain language of Title III discredits Defendants' argument that additional auxiliary aids and services are unnecessary because the only integral information is the game play, which can be understood by deaf and hard of hearing fans simply by watching the game. Title III requires Defendants to provide "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations" available at FedExField. Defendants provide more than a football game; they also provide public address announcements, advertisements, music, and other aural information to hearing fans at FedExField. Presumably Defendants provide this aural information to hearing fans for a reason. This aural information is a good, service, facility, privilege, advantage, or accommo-

dation. Without some form of auxiliary aid or service, Plaintiffs would not have equal access to this information. On the face of the statute, the Court believes and concludes that Title III of the ADA requires Defendants to provide deaf and hard of hearing fans equal access to the aural information broadcast over the stadium bowl public address system at FedEx-Field, which includes music with lyrics, play information, advertisements, referee calls, safety/emergency information, and other announcements.[13]

The Court holds that Defendants' merits argument does not support summary judgment in favor of the Defendants. As the Plaintiffs have standing, as the case is not moot, and as the Defendants' merits argument is not persuasive, Defendants' Motion for Summary Judgment is DENIED.

Viewing the record in the light most favorable to Defendants, the Court finds that there are no genuine disputes of material fact regarding whether the ADA requires Defendants to provide deaf and hard of hearing fans equal access to the aural information broadcast at FedEx-Field. Therefore, the Court will GRANT–IN–PART Plaintiffs' Cross Motion for Summary Judgment. The Court believes and declares that the ADA requires Defendants to provide deaf and hard of hearing fans equal access to the aural information broadcast over the stadium bowl public address system at FedExField.

■ The Court further finds that there are no genuine disputes of material fact regarding the feasibility of providing access to music broadcast at FedExField. Other than broad and conclusory state-

---

**13.** In making this finding, the Court notes that it is not persuaded by Defendants' argument that bars and restaurants are not required to caption background music. While the Court expresses no opinion on the ADA requirements for bars and restaurants, the Court believes there is a significant difference between a stadium that seats 91,000 people, which currently captions audio content on large LED ribbon boards, and a bar or restaurant.

ments made by their counsel, Defendants have not pointed to any specific hardship or undue burden that they would suffer by providing access to music with lyrics available at FedExField. The Court finds that the ADA's implementing regulations require Defendants to provide auxiliary services to ensure that music with lyrics played at FedExField is effectively communicated to deaf and hard of hearing fans. Despite Plaintiffs' request, however, the Court will not declare that captioning, as opposed to other auxiliary aids or services, is required. Defendants correctly argue that the law does not dictate what auxiliary services must be provided. *See* 28 C.F.R. pt. 36, App. B (stating that: "The auxiliary aid requirement is a flexible one .... the Department believes that Congress did not intend under title III to impose upon a public accommodation the requirement that it give primary consideration to the request of the individual with a disability.").

The Court finds that Plaintiffs' request for injunctive relief is not prudent or necessary at this time. Defendants already provide the vast majority of the captioning Plaintiffs seek. There is no indication that Defendants intend to cease providing captioning. Therefore, the Court does not believe injunctive relief is necessary to ensure that Defendants continue to provide the current captioning.

▮ With respect to the line of sight issue, the Court will DENY Plaintiffs' Cross Motion for Summary Judgment. Plaintiffs argue that the location of the LED ribbon boards does not provide effective communication because they cannot watch watching the JumboTrons while reading the captioning on the LED ribbon boards. Defendants assert that aural information does not narrate JumboTron video and that Plaintiffs' expert stated that the LED ribbon boards were well placed. This is genuine dispute of material fact,

and, thus, summary judgment would be inappropriate on the issue of whether captioning on the LED ribbon boards provides effective communication. *See, e.g., Chisolm v. McManimon*, 275 F.3d 315, 327 (3d Cir.2001) (finding that the question of whether auxiliary aids and services are effective communication is an issue of fact for the jury to determine).

## CONCLUSION

For the foregoing reasons, the Court will DENY Defendants' Motion for Summary Judgment; GRANT–IN–PART and DENY–IN–PART Plaintiffs' Cross Motion for Summary Judgment; and DENY Plaintiffs' Motion for Leave to File Surreply. A separate Order will follow.

## *ORDER*

For the reasons stated in the foregoing Memorandum Opinion, IT IS this 30th day of September,2008, by the United States District Court for the District of Maryland, **ORDERED:**

1. That Defendants' Motion for Summary Judgment (Docket No. 34) BE, and the same hereby IS, **DENIED;**

2. That Plaintiffs' Cross Motion for Summary Judgment (Docket No. 35) BE, and the same hereby IS, **GRANTED–IN–PART and DE-NIED–IN–PART;**

3. That Title III of the Americans with Disabilities Act is hereby declared to require Defendants to provide deaf and hard of hearing fans equal access to the aural information broadcast over the stadium bowl public address system at FedExField, which includes music with lyrics, play information, advertisements, referee calls, safety/emergency information, and other announcements;

4. That with respect to the remaining issue of line of sight, the Court denies summary judgment and concludes that this issue must be resolved by trial;

5. That Plaintiffs' Motion for Leave to File Surreply (Docket No. 38) BE, and the same hereby IS, **DENIED;**

6. That the parties initiate a status conference with the Court within thirty (30) days to discuss scheduling of any remaining issues in this case; AND

7. That the Clerk of the Court transmit a copy of this Order to all counsel of record.